1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DUANE HOLLOWAY,                          Case No.  2:05-cv-02089-DJC-JDP

12                     Petitioner,            DEATH PENALTY CASE

13        v.                                  **FINDINGS & RECOMMENDATIONS**

14   MICHAEL MARTEL, *et al.*,                ECF No. 56

15                     Respondents.

16

17          Petitioner is a state prisoner under sentence of death.  Pending before the court is

18   respondent's motion for summary judgment, seeking partial summary judgment on petitioner's

19   Petition for Writ of Habeas Corpus on the grounds that certain claims are procedurally barred

20   from federal court review.[1]  ECF No. 56.  After careful consideration of the parties' briefs, ECF

21   Nos. 56, 65, 69, 73, and 85, and of the state court record, the undersigned recommends that

22   respondent's motion for summary judgment be denied without prejudice as to claims 1.C, 1.F,

23   7.B, 11, and 28 of the petition and granted as to claims 1.A, 1.D (to the extent it alleges

24   ineffective assistance of counsel), 1.E.2, 2.A, 2.B, 2.C, 2.D, 2.E, 3, 4, 5.A, 5.B, 5.C, 5.D, 5.E.1,

25   5.F.2, 5.F.4, 5.G, 5.H, 5.I, 5.K, 5.L, 5.M, 5.N, 5.O, 6.C, 7.A, 7.C, 7.D, 9, 10.A, 19.B, 19.C, 21.B,

26

27          [1] Pursuant to respondent's request, *see* ECF No. 73 at 1 n.1, and in accordance with
     Federal Rule of Civil Procedure 25(d), Michael Martel is substituted for his predecessor.  The
28   Clerk of Court is directed to update the docket to reflect the substitution.

                                               1

1    27, and 31.

2                              **PROCEDURAL HISTORY**

3          In 1983, petitioner was charged by Information in Sacramento County, California, for the

4    first-degree murders of Diane Pencin and Debra Cimmino, first-degree burglary, and attempted

5    rape of Ms. Cimmino.  He was tried and found guilty on all counts and sentenced to death.  LD 1-

6    4.[2]  On appeal, the California Supreme Court reversed petitioner's convictions and sentences due

7    to juror misconduct.  *People v. Holloway*, 50 Cal. 3d 1098, 1103 (1990); LD 16.

8          Petitioner was retried in 1992 and again both convicted and sentenced to death.  LD 17,

9    Vol. 5 at 1373-1380; LD 17, Vol. 7 at 1814.  He appealed to the California Supreme Court, LD

10   21-23, and, on June 17, 2004, that court upheld the conviction and sentence.  *People v. Holloway*,

11   33 Cal. 4th 96 (2004).  LD 24.  He petitioned for writ of certiorari from the United States

12   Supreme Court, which was denied.  LD 35-37.

13         In July 2003, while his direct appeal was pending, petitioner filed his first petition for writ

14   of habeas corpus in the California Supreme Court.  LD 30-31.  After informal briefing, the

15   California Supreme Court denied the petition.  LD 34.

16         On October 19, 2005, petitioner commenced proceedings in this court, with a motion to

17   proceed in forma pauperis and a motion to appoint counsel; both motions were granted.  ECF

18   Nos. 1-3.  Petitioner moved for equitable tolling of the applicable statute of limitations, ECF No.

19   10, and after briefing and a hearing, the court granted the motion and directed petitioner to file a

20   petition for writ of habeas corpus no later than September 29, 2006.  ECF Nos. 22-23; *see* ECF

21   Nos. 14, 18.

22         On September 29, 2006, petitioner filed a petition for writ of habeas corpus with this

23   court, alleging thirty-five claims for relief.  ECF No. 29.  The same day, petitioner filed a motion

24   to stay and hold the matter in abeyance so that he could exhaust claims in the state court.  ECF

25   No. 30.  The court granted the motion after briefing and argument.  ECF Nos. 35-36; *see* ECF

26   Nos. 31, 33.

27   _____

28         [2] "LD," followed by volume number and page number where appropriate, refers to the
     document or transcript lodged with this court by respondent on March 19, 2010.  *See* ECF No. 55.

                                            2

On October 30, 2006, petitioner filed a second petition for writ of habeas corpus with the California Supreme Court.  ECF No. 32.[3]  After informal briefing, LD 38-39, the California Supreme Court summarily denied the petition.  LD 40.  The California Supreme Court denied all claims on the merits and, additionally, denied some claims through the application of various procedural bars.  *Id.*

On October 22, 2009, this court lifted the previously imposed stay.  ECF No. 47.  On March 11, 2010, respondent filed its answer to the Petition for Writ of Habeas Corpus in this court.  ECF No. 54.

On April 29, 2010, respondent filed the instant motion for summary judgment.  ECF No. 56.  On August 2, 2010, briefing was stayed pending issuance of a decision in *Walker v. Martin*, 562 U.S. 307 (2011), by the United States Supreme Court.  ECF No. 62.  Per the court's request, the parties filed a joint statement on February 28, 2011, in which they proposed a briefing schedule for the pending summary judgment motion that would permit the parties to address *Walker* in detail.  ECF No. 65.  The court adopted the proposed schedule on March 10, 2011. ECF No. 66.  Petitioner then filed an opposition to the motion, ECF No. 69, and respondent filed a reply.  ECF No. 73.

During this time, the Court also directed the parties to file briefs concerning the effect of the United States Supreme Court's opinion in *Cullen v. Pinholster*, 563 U.S. 170 (2011).  ECF Nos. 68, 70, 72.  On November 3, 2011, the court vacated the hearing on respondent's motion for summary judgment, ordering the parties to meet and confer and to submit a joint statement addressing "resolution of the section 2254(d) standards, respondent's motion for summary

---

[3] Petitioner lodged this petition and its accompanying exhibits in this court on November 1, 2006.  ECF No. 32.  On October 2, 2023, petitioner relodged that petition and exhibits, requesting that some exhibits be lodged under seal.  ECF No. 90-91.  At the same time, petitioner also lodged respondent's informal response to that petition and petitioner's reply to that response, including its accompanying exhibits, all of which had been filed in state court.  ECF No. 90.  The informal response and reply had previously been lodged by respondent on March 19, 2010.  ECF No. 55 (lodged documents 38 & 39).  For clarity's sake, herein, the undersigned refers to these documents by their document numbers at the time of their initial lodging in this court; thus, the second state habeas petition and its exhibits are referred to as ECF No. 32, the informal response to that petition is referred to as LD 38, and the reply to the informal response is referred to as LD 39.

1    judgment, any other contemplated motions (i.e., discovery, evidentiary hearing), and the merits of

2    petitioner's claims." ECF No. 76. Petitioner moved for reconsideration of the order, ECF No.

3    77, and, following a hearing on the matter, the court granted petitioner's motion and ordered the

4    parties to submit revised briefing following the anticipated decision from the United States

5    Supreme Court in *Martinez v. Ryan*. ECF No. 83.

6           The United States Supreme Court decided *Martinez v. Ryan*, 566 U.S. 1 (2012), on March

7    20, 2012. On April 19, 2012, respondent advised this court that he would not be filing a revised

8    motion for summary judgment. ECF No. 84. On May 10, 2012, pursuant to the court's January

9    26, 2012 order, *see* ECF No. 83, petitioner filed a revised opposition to respondent's summary

10   judgment motion. ECF No. 85.

11          On October 1, 2020, this matter was assigned to the undersigned. ECF No. 88.

12                                          **ANALYSIS**

13          In the instant motion, respondent moves for summary judgment on claims 1.A, 1.C, 1.D

14   (to the extent it alleges ineffective assistance of counsel), 1.E.2, 1.F, 2.A, 2.B, 2.C, 2.D, 2.E, 3, 4,

15   5.A, 5.B, 5.C, 5.D, 5.E.1, 5.F.2, 5.F.4, 5.G, 5.H, 5.I, 5.K, 5.L, 5.M, 5.N, 5.O, 6.C, 7.A, 7.B, 7.C,

16   7.D, 9, 10.A, 11, 19.B, 19.C, 21.B, 27, 28, and 31, arguing that these claims were denied by the

17   state court through the application of a procedural bar that is adequate and independent of federal

18   law.[4]  ECF No. 56; ECF No. 73 at 1, 15 & Appendix. Specifically, respondent first argues that

19   the state court properly dismissed as untimely claims 1.A, 1.C, 1.D (to the extent it alleges

20   ineffective assistance of counsel), 1.E.2, 1.F, 2.A, 2.B, 2.C, 2.D, 2.E, 3, 4, 5.A, 5.B, 5.C, 5.D,

21   5.E.1, 5.F.2, 5.F.4, 5.G, 5.H, 5.I, 5.K, 5.L, 5.M, 5.N, 5.O, 6.C, 7.A, 7.C, 7.D, 9, 10.A, 19.B, 19.C,

22   21.B, 27, and 31. ECF No. 56 at 2-199; ECF No. 73 at 1. Respondent also argues that the state

23   court properly denied claims 1.A, 1.C, 1.D (to the extent it alleges ineffective assistance of

24   counsel), 1.F, 2.A, 2.B, 2.C, 2.D, 2.E, 3, 4, 5.A, 5.B, 5.C, 5.D, 5.E.1, 5.F.2, 5.F.4, 5.G, 5.H, 5.I,

25          [4] In his motion for summary judgment, respondent had also argued that the allegations
26   comprising what he describes as subclaim 1.E.1—alleging that juror Edmonds had improperly
     discussed with other jurors his request to see a photograph of one of the victims while she was
27   alive—should be dismissed as having been defaulted by the California Supreme Court through its
     invocation of the contemporaneous objection rule. ECF No. 56 at 11-13. In his reply brief,
28   however, he abandoned this argument. *See* ECF No. 73 at 15 & Appendix.

5.K, 5.L, 5.M, 5.N, 5.O, 6.C, 7.A, 7.C, 7.D, 9, 10.A, 19.B, 19.C, 21.B, and 27 because, per the state court, these claims could have been raised in a prior petition for writ of habeas corpus were not.  ECF No. 56 at 2-199; ECF No. 73 at 1.  Respondent additionally argues that the state court properly denied claims 3, 4, 7.A, 7.C, 7.D, 9, 10.A, and 21.B on the grounds that they could have been raised on appeal but were not.  ECF No. 56 at 28-33, 71-75, 76-86, 92-94.  Respondent next argues that claims 7.B, 11, and 28 were properly denied on appeal by the state court's application of the contemporaneous objection rule.  ECF No. 56 at 75-76, 86-88, 97-99.  Finally, respondent argues that claim 1.E.2, in addition to having been properly denied as untimely, was properly barred by the state court because the claim had been previously raised and rejected both on direct appeal and in a prior habeas corpus proceeding.  ECF No. 56 at 13-15.

Petitioner disputes the application of these bars, ECF No. 85 at 15-48, and further argues that, even if these bars facially apply to the claims at issue, the federal courts should disregard the procedural bars because petitioner's counsel's ineffectiveness, at each relevant stage of the proceedings, caused the default and prejudiced him.  ECF No. 85 at 49-56.  Petitioner argues in the alternative that the federal court should disregard the identified procedural bars because their application would result in a fundamental miscarriage of justice.  ECF No. 85 at 56-61.

The undersigned considers each argument in turn.

## I.      Law Governing Summary Judgment

Although a petition for writ of habeas corpus attacks a criminal judgment, it is, fundamentally, "an independent civil suit."  *Riddle v. Dyche*, 262 U.S. 333, 335-36 (1923).  "The procedure on applications for habeas corpus for state prisoners is . . . found in a variety of different sources," 17B Wright, Miller, Cooper & Amar, Federal Practice and Procedure § 4268, at 437-38 (2007), including the Federal Rules of Civil Procedure.  Rules Governing Section 2254 Cases in the United States District Courts, Rule 11.  Thus, courts have found summary judgment motions as described in Rule 56 of the Federal Rules of Civil Procedure to be appropriate in habeas corpus proceedings.  *See Blackledge v. Allison*, 431 U.S. 63, 80 (1977); *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000) ("As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas

1  corpus cases."); *Gentry v. Sinclair*, 576 F. Supp. 2d 1130, 1138-40 (W.D. Wash. 2008).

2        Under Rule 56, summary judgment is appropriate when there is "no genuine dispute as to

3  any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

4  56(a).  The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims

5  or defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Procedurally, the moving

6  party bears the initial responsibility of presenting the basis for its motion and identifying those

7  portions of the record, which, together with any affidavits, it believes demonstrate the absence of

8  a genuine issue of material fact.  *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070,

9  1076 (9th Cir. 2001) (en banc).  If the moving party meets its burden with a properly supported

10  motion, the burden then shifts to the opposing party to present specific facts that show there to be

11  a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248

12  (1986).  When the opposing party bears the burden of proof on a dispositive issue at trial, the

13  moving party need not produce evidence that negates the opponent's claim.  *See, e.g.*, *Lujan v.*

14  *National Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to

15  matters that demonstrate the absence of a genuine material factual issue.  *See Celotex*, 477 U.S. at

16  323-24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

17  issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

18  depositions, answers to interrogatories, and admissions on file.'").

19      **II.**    **General Law Governing Procedural Defaults**

20        As a matter of comity, the federal courts "will not review a question of federal law

21  decided by a state court if the decision of that court rests on a state law ground that is independent

22  of the federal question and adequate to support the judgment."  *Coleman v. Thompson*, 501 U.S.

23  722, 729 (1991), *superseded on other grounds by* 28 U.S.C. § 2254(b) and *overruled on other*

24  *grounds by Martinez v. Ryan*, 566 U.S. 1 (2012).  For a claim to be procedurally barred, the

25  petitioner must have actually violated a state procedural rule, *see Wells v. Maass*, 28 F.3d 1005,

26  1008 (9th Cir. 1994), and the highest state court to consider the claim must have actually relied on

27  the procedural default to deny the claim.  *See Harris v. Reed*, 489 U.S. 255, 261-62 (1989);

28  *Loveland v. Hatcher*, 231 F.3d 640, 643 (9th Cir. 2000).  For a state procedural rule to be found

1   "independent of the federal question," *Coleman*, 501 U.S. at 729, the state law basis for the

2   decision must not be interwoven with federal law. *Cooper v. Neven*, 641 F.3d 322, 332 (9th Cir.

3   2011); *Bennett v. Mueller*, 322 F.3d 573, 581 (9th Cir. 2003); *LaCrosse v. Kernan*, 244 F.3d 702,

4   704 (9th Cir. 2001). To be "adequate to support the judgment," *Coleman*, 501 U.S. at 729, the

5   rule must be "firmly established and regularly followed" at the time of the purported default.

6   *Beard v. Kindler*, 558 U.S. 53, 60 (2009) (quoting *Lee v. Kemna*, 534 U.S. 362, 376 (2002)); *see*

7   *Fields v. Calderon*, 125 F.3d 757, 760 (9th Cir. 1997) (holding that the question of whether a

8   state procedural bar is clear, consistently applied, and well-established is determined as of the

9   time the purported default occurred, not when a state court applied the bar to a claim).

10       The state bears the initial burden of pleading the existence of an independent and adequate

11   state procedural ground. *Williams v. Filson*, 908 F.3d 546, 577 (9th Cir. 2018); *Bennett*, 322 F.3d

12   at 585-86. If the state makes this initial showing, the burden shifts to the petitioner to

13   demonstrate that the procedural ground is not adequate, for example because it was not

14   consistently applied at the time of the state court adjudication. *Williams*, 908 F.3d at 577. If the

15   petitioner makes such a showing, the burden shifts back to the state to make a showing in rebuttal.

16   *Id*.

17       A federal court may elect not to apply an otherwise-valid procedural bar in two narrow

18   circumstances: if the petitioner can demonstrate cause for the default and prejudice as a result of

19   the alleged violation of federal law, or if the petitioner can show that failure to consider the claim

20   will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750; *see also Martinez*,

21   566 U.S. at 9-10; *Maples v. Thomas*, 565 U.S. 266, 280 (2012). Ineffective assistance of counsel,

22   violating a petitioner's Sixth Amendment rights in the state direct appeal or habeas corpus

23   litigation, may constitute cause for the federal court excusing an otherwise valid procedural

24   default. *See Martinez*, 566 U.S. 1.

25       If the federal court finds a state's procedural default inapplicable, then the federal court

26   reviews the claim de novo. *Cone v. Bell*, 556 U.S. 449, 472 (2009); *Pirtle v. Morgan*, 313 F.3d

27   1160, 1167 (9th Cir. 2002). Correspondingly, where a claim is meritless, the federal court may

28   deny it on that basis without first determining the adequacy, independence, and applicability of

any procedural bars asserted for the claim.  *See, e.g.*, *Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002) ("[A]ppeals courts are empowered to, and in some cases should, reach the merits of habeas petitions if they are, on their face and without regard to any facts that could be developed below, clearly not meritorious despite an asserted procedural bar."); *see also Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005) (holding that an application for habeas corpus may be denied on the merits even if unexhausted in state court).

### III.     Timeliness Bar

Here, respondent has asserted that this court is barred from considering claims 1.A, 1.C, 1.D (to the extent it alleges ineffective assistance of counsel), 1.E.2, 1.F, 2.A, 2.B, 2.C, 2.D, 2.E, 3, 4, 5.A, 5.B, 5.C, 5.D, 5.E.1, 5.F.2, 5.F.4, 5.G, 5.H, 5.I, 5.K, 5.L, 5.M, 5.N, 5.O, 6.C, 7.A, 7.C, 7.D, 9, 10.A, 19.B, 19.C, 21.B, 27, and 31, of the Petition for Writ of Habeas Corpus because the California Supreme Court previously considered them and properly denied them as untimely. ECF No. 56 at 2-199; ECF No. 73 at 1.  Petitioner concedes that the California Supreme Court denied these claims as untimely when it denied in full his second state petition.  *See* ECF No. 85 at 1-2; LD 40 at 1 (citing *In re Robbins*, 18 Cal. 4th 770, 799 n.1 (1998), and *In re Clark*, 5 Cal. 4th 750, 782-87 (1993)).  Petitioner argues, however, that this court should not defer to that default because the California timeliness rule is not "adequate," within the meaning of the procedural default rules, because it serves no state interest, impedes federal review, and disserves the goal of comity between the federal and state systems.  ECF No. 85 at 16-27.  Petitioner also argues that California's timeliness bar is not independent of federal law, and therefore deference to it by this court is not permitted.  ECF No. 85 at 37-43.[5]

In California, a convicted person seeking review of their judgment or sentence via writ of habeas corpus must file a petition in the state court "as promptly as the circumstances allow," *In re Clark*, 5 Cal. 4th 750, 765, n. 5 (1993), and "without substantial delay."  *In re Robbins*, 18 Cal. 4th 770, 780 (1998); *see Walker v. Martin*, 562 U.S. 307, 310 (2011) (citing same).  In 2002, there was a presumption that a petition in a capital case would be considered "filed without

---

[5] Petitioner raises additional arguments specific to claims 1.C, 1.E.2, and 1.F, which are discussed *post*.

substantial delay if it [was] filed within 180 days after the final due date for the filing of appellant's reply brief on the direct appeal . . . ."  Cal. Supreme Court Policies Regarding Cases Arising From Judgments of Death, Policy 3, Standard 1–1.1 (2002).[6]  If a habeas corpus petitioner files a petition with substantial delay, the state court may nevertheless consider it if the petitioner shows that he delayed filing his petition because "(1) he had good reason to believe other meritorious claims existed, and (2) the existence of facts supporting those claims could not with due diligence have been confirmed at an earlier time."  *Clark*, 5 Cal. 4th at 781.  "Claims substantially delayed without justification," however, "may be denied as untimely," under California's rules.  *Walker*, 562 U.S. at 310 (citing *Robbins*, 18 Cal. 4th at 780 and *Clark*, 5 Cal. 4th at 765 n.5).  Finally, even if the state court concludes that the petition was filed with a substantial delay that was unjustified, it may nevertheless opt to ignore the time bar and consider the petition's merits where, either, (i) a constitutional error created a trial so fundamentally unfair that, absent the error, no reasonable judge or jury would have convicted the petitioner; (ii) the petitioner is innocent; (iii) the sentencing judge or jury had such a grossly misleading profile of the petitioner that absent the error, no reasonable sentencer would have imposed a sentence of death; or (iv) "the petitioner was convicted or sentenced under an invalid statute."  *Clark*, 5 Cal. 4th at 797-98.

    *A.    Adequacy*

    Petitioner first argues that this court should not defer to California's timeliness bar because it is not "adequate," within the meaning of *Coleman*, 501 U.S. 722, because the state court principally applies this bar to evade federal review and, in application, it does not serve the interests of comity or federalism.  ECF No. 85 at 15-26.  None of petitioner's arguments have

---

[6] As noted *supra*, this court considers the adequacy and independence of the asserted procedural bar at the time the purported default, not at the time it was applied by the state court.  *Fields*, 125 F.3d at 760-61.  Petitioner's reply brief on direct appeal was filed on June 19, 2002, *see* LD 23, and, on July 17, 2002, the California Supreme Court amended its rules for cases arising out of death judgments to provide that a habeas corpus petition would be presumed timely if it was filed within 180 days of the filing of appellant's reply brief.  *See* Cal. Supreme Court Policies Regarding Cases Arising From Judgments of Death, Policy 3, Standard 1–1.1 (2002 rev'n).  Thus, the state court petition was presumptively untimely, under California's rules, if it was filed after December 16, 2002.

merit.  In *Walker*, 562 U.S. 307, the Supreme Court specifically considered California's timeliness bar and concluded that it was "adequate" under the procedural bar doctrine. Reviewing the California Supreme Court's historical application of this bar, the Supreme Court concluded that the timeliness bar was both firmly established and consistently followed at the time of Mr. Martin's 2002 default.  *Walker*, 562 U.S. at 317-21.  The Court cautioned, however, that "federal courts must carefully examine state procedural requirements to ensure that they do not operate to discriminate against claims of federal rights."  *Id.* at 321 (citing *Brown v. Western R. Co. of Ala.*, 338 U.S. 294, 298-99 (1949); *Davis v. Wechsler*, 263 U.S. 22, 24-25 (1923); 16B Wright & Miller § 4026, p. 386 (noting "risk that discretionary procedural sanctions may be invoked more harshly against disfavored federal rights, . . . deny[ing] [litigants] a fair opportunity to present federal claims"); and *Kindler*, 558 U.S., at 65 (Kennedy, J., concurring) (a state procedural ground would be inadequate if the challenger shows a "purpose or pattern to evade constitutional guarantees")).

Petitioner argues that California's application of its timeliness bar—and other procedural bars—in capital habeas corpus cases implicates this concern identified in *Walker*.  Per petitioner, because the California Supreme Court routinely denies capital habeas corpus claims both on procedural grounds and on the merits, that Court must have the principal purpose of stymieing federal habeas corpus review of federal claims.  ECF No. 85 at 17-26.  In making this argument, petitioner describes the procedural defaults as "superfluous," given that the state court, in these instances, has also simultaneously denied the claims on their merits.  *See id*.  Petitioner tendered in support of this argument data indicating that, from January 1, 2000, to May 24, 2011, the California Supreme Court summarily denied 220 petitions for writs of habeas corpus in capital cases and denied them all both on the merits and through the application of procedural bars.  ECF No. 85 at 18-19; ECF No. 69, Ex. 3.  This suffices to meet petitioner's "modest" burden to challenge the adequacy of the asserted bar.  *See Dennis v. Brown*, 361 F. Supp. 2d 1124, 1130 (N.D. Cal. 2005) (citing *Bennett*, 322 F.3d at 585-86); *see also Powell v. Lambert*, 357 F.3d 871, 879 (9th Cir. 2004).

Respondent does not dispute petitioner's factual allegations about the California Supreme

10

1   Court's practice of summarily denying relief on capital habeas corpus petitions by both invoking

2   procedural bars and denying relief on the merits.  ECF No. 73 at 2-5.  He argues, though, that

3   petitioner's data does not compel the conclusion that the California Supreme Court's practice

4   implies that it invokes procedural bars, including the timeliness bar, in order to discriminate

5   against claims asserting federal rights by frustrating federal courts' review.  *Id*.

6         Respondent's argument is more persuasive here.  As the Supreme Court observed when

7   assessing the California Supreme Court's practice of summary adjudication of capital habeas

8   corpus petitions, "[o]pinion-writing practices in state courts are influenced by considerations

9   other than avoiding scrutiny by collateral attack in federal court."  *Harrington v. Richter*, 562

10  U.S. 86, 99 (2011).  In making this observation, the Court cited to the California Supreme Court's

11  statement in *In re Robbins,* 18 Cal. 4th 770, 778 n.1 (1998), that the court's application of

12  procedural bars in capital postconviction cases are a "means of protecting the integrity of our own

13  appeal and habeas corpus process" rather than a device for "insulating our judgments from federal

14  court review."  *See id*.  The California Supreme Court in *Robbins* noted that it routinely denied

15  capital habeas corpus petitions through the application of procedural bars because the "imposition

16  of procedural bars substantially advances important institutional goals" of timely, orderly

17  administration of justice in postconviction proceedings.  *See Robbins*, 18 Cal. 4th at 778 n.1.  In

18  the case of the timeliness bar specifically, the California Supreme Court commented that

19  "imposition of the bar has had the documented and salutary effect of promoting compliance with

20  state habeas corpus procedures calling for prompt investigation and submission of habeas corpus

21  claims . . . . .  Clearly, that institutional interest would suffer were the timeliness requirement to

22  be ignored . . ."  *Id*. (internal citation omitted).

23        Recognizing these institutional interests in the application of a state's procedural bars, the

24  Supreme Court has specifically approved of state courts' practice of dismissing a claim on

25  alternative grounds—e.g., both on procedural grounds and on the merits.  In *Harris*, the Court

26  acknowledged that state courts apply procedural bars to habeas corpus claims alleging federal

27  constitutional error, in order to serve those courts' "interests in finality, federalism, and comity."

28  489 U.S. at 264 n.10.  Even so, the Court instructed,

11

1

2

3

4

5

6

> a state court need not fear reaching the merits of a federal claim in an *alternative* holding.  By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.  [citation] . . . In this way, a state court may reach a federal question [on the merits of the claim] without sacrificing its interests in applying the procedural bar.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Id.*  Courts' use of alternative holdings is a practice that is not, in and of itself, suspect.  *See, e.g.*, *Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935).  In the habeas corpus context, "there may be occasions when the state courts believe that the interests of justice are better served by denying the prisoner's arguments for both procedural and substantive reasons," including that "a court [may] want to show that it does not think its reliance on a procedural rule is causing any great injustice."  *U.S. ex rel. Caruso v. Zelinsky*, 689 F.2d 435, 440 (3d Cir. 1982); *Davis v. Allsbrooks*, 778 F.2d 168, 175 (4th Cir. 1985) (citing same); *see generally Long*, 463 U.S. at 1038-39 (noting the common practice of states denying habeas corpus claims on multiple grounds).  Additionally, because federal habeas corpus review proceeds differently under AEDPA depending on whether a particular claim was denied on procedural grounds or on the merits, *see generally* 28 U.S.C. § 2254(d), ambiguity in the state court's reasons for judgment may present considerable challenges for federal courts in applying AEDPA.  *See, e.g.*, *Wilson v. Sellers*, 584 U.S. __, 138 S. Ct. 1188, 1192, 200 L. Ed. 2d 530 (2018); *Richter*, 562 U.S. at 98-100, 103.  For this reason, the state court may believe it useful to articulate all of its alternative reasons for its denial when adjudicating habeas corpus petitions.  *See generally Wilson*, 138 S. Ct. at 1194-95; *Richter*, 562 U.S. at 98-100; *Coleman*, 501 U.S. at 738-40; *Long*, 463 U.S. at 1038-41; *see, e.g.*, *Curiel v. Miller*, 830 F.3d 864, 877 (9th Cir. 2016) (Bybee, J., concurring) ("express[ing] . . . frustration that communication between the California Supreme Court and our court over the proper interpretation of California state habeas decisions has devolved into a series of hints that the California Supreme Court obliquely telegraphs and that we struggle to decipher"); *Castro v. Klinger*, 373 F.2d 847, 850 (9th Cir. 1967) ("From our standpoint, the failure of the California

court to reveal the basis of its denial, whether substantive or procedural, is unfortunate.").

Accordingly, respondent has shown that California's timeliness bar was "adequate" as applied to the claims at issue.

*B.    Independence*

Petitioner next argues that California's timeliness bar does not deserve deference because it is not independent of federal law, since the state court would need to consider federal law in determining at what point the petitioner learned of facts suggesting a prima facie case of a federal constitutional violation, whether good cause existed to justify a substantial delay due to counsel's investigation into a federal constitutional claim, and whether petitioner's counsel's ineffectiveness (under the federal constitutional standard) constituted good cause to justify the delay. ECF No. 85 at 38-43.  For these reasons, per petitioner, the state court must resolve questions that are "interwoven with the federal law," *id*. at 37 (citing *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983)), when determining whether a habeas corpus petition was timely filed as a matter of state procedural law.

Many of petitioner's arguments have been foreclosed by the Ninth Circuit.  In *Bennett v. Mueller*, 322 F.3d 573 (9th Cir. 2003), the Ninth Circuit considered the California Supreme Court's application of timeliness bars in habeas corpus cases after August 3, 1998, and concluded that this bar "is not interwoven with federal law, [but] it is an independent state procedural ground" for the denial of a claim.  322 F.3d at 581.  The Ninth Circuit observed that, prior to that date, the California Supreme Court had "previously considered the federal constitutional merits of the petitions in determining whether the petitions qualified for an exception to the rule of procedural default."  *Id*.  On August 3, 1998, however, the California Supreme Court issued its decision in *Robbins*, 18 Cal. 4th 770, in which it expressly disavowed this practice.  It held that, when applying any of the first three exceptions set forth in *Clark*, 5 Cal. 4th at 797-98, it would consider state law.[7]  *Robbins*, 18 Cal. 4th at 812 n.32; *see Bennett*, 322 F.3d at 582.  Moreover,

_____

[7] As noted above, under *Clark*, the California courts may choose not to apply the timeliness bar to a habeas petition filed with an unjustified, substantial delay if (i) a constitutional error created a trial so fundamentally unfair that, absent the error, no reasonable judge or jury would have convicted the petitioner; (ii) the petitioner is innocent; (iii) the sentencing judge or

1   when considering the first *Clark* exception—whether the error "constitutes 'error of constitutional

2   magnitude' leading to 'a trial that was so fundamentally unfair that absent the error no reasonable

3   judge or jury would have convicted the petitioner,'" *Robbins*, 19 Cal. 4th at 811 (quoting *Clark*, 5

4   Cal. 4th at 811)—it specifically would "assume, for the purpose of addressing the procedural

5   issue, that a federal constitutional error is stated" and then determine if, as a matter of state law,

6   such an error was of the nature as to satisfy the remaining language of the exception. *Robbins*, 19

7   Cal. 4th at 811. The Ninth Circuit rejected the argument that the California Supreme Court's

8   consideration of the state constitutional basis for habeas claims necessarily implicated comparable

9   federal constitutional principles. *Bennett*, 322 F.3d at 582.

10       Petitioner argues that *Bennet*'s holding—though ostensibly broad—should be understood

11   as limited to the *Clark* exceptions, since that was all that was at issue in *Bennett*. ECF No. 85 at

12   41. This argument is unpersuasive. Although a *Clark* exception was at issue in *Bennett*, in

13   *Robbins*—the case on which *Bennett* relied—the California Supreme Court's holding was not so

14   limited. Instead, in *Robbins* the California Supreme Court considered each step in the timeliness

15   analysis—whether the petition was brought without substantial delay; whether substantial delay

16   could be justified for good cause; and whether petitioner's unjustified, substantial delay should be

17   excused under *Clark*—by relying on petitioner's factual allegations concerning his knowledge of,

18   and ability to have developed and investigated, "potentially meritorious habeas corpus claims."

19   *Robbins*, 18 Cal. 4th at 809. In other words, the state court in applying this bar does not consider

20   whether the claim is *actually* meritorious under federal law, but rather whether it is *potentially* so.

21   *See also Gallego*, 18 Cal. 4th at 833 (explaining that habeas corpus counsel should investigate

22   potential claims for relief where "a petitioner or counsel knows or should know . . . of triggering

23   facts—i.e., facts sufficient to warrant further investigation, but insufficient to state a prima facie

24   case for relief"). To conduct its timeliness analysis, the state court's focus is on whether the

25   _____

26   jury had such a grossly misleading profile of the petitioner that absent the error, no reasonable
     sentencer would have imposed a sentence of death; or (iv) "the petitioner was convicted or

27   sentenced under an invalid statute." *Clark*, 5 Cal. 4th at 797-98. In *Bennett*, as here, petitioner
     did not invoke the fourth *Clark* exception. *Bennett*, 322 F.3d at 582 n.1; *see* LD 30 at 13-14; ECF

28   No. 32 at 14-16.

petitioner has sufficiently alleged that his development of such a potentially meritorious claim was stymied in some way; in assessing these allegations, the state court considers only whether the petitioner has alleged with sufficient particularity the facts demonstrating that the petition should be deemed timely or that its delay should be considered justified. *Robbins*, 18 Cal. 4th at 795-96, 805-09 & nn.16, 21, 28, 29; *see also Clark*, 5 Cal. 4th at 765, 779 & n.5. Hence, in making this determination, the state court does not evaluate the merits of a claim pleading a violation of federal constitutional law; its conclusion that a petition was unjustifiably delayed is not interwoven with questions of federal law.

Petitioner further argues that California's timeliness bar is not independent because the question of whether habeas corpus counsel's ineffectiveness caused a substantial delay in filing a habeas petition is interwoven with federal law, as the standard for ineffectiveness in this context relies on federal law. This position is similarly unavailing. Although in *Robbins*, the California Supreme Court cited United States Supreme Court authority in describing the standard for ineffective assistance of counsel, it also relied on the state-law standard of ineffectiveness, flowing from the California constitution. *See Robbins*, 18 Cal. 4th at 810 (citing *In re Harris*, 5 Cal. 4th 813, 833 (1993)). Ergo, even if these standards are equivalent, the state court need not determine whether federal constitutional law has been violated in order to apply vel non the procedural bar. *See Bennett*, 322 F.3d at 582; *see, e.g.*, *In re Sanders*, 21 Cal. 4th 697, 719-24 (1999). To the extent that the California courts do consider federal law in determining whether habeas counsel's ineffectiveness constituted good cause for substantial delay, the California Supreme Court has indicated that it only considers whether petitioner's allegations set forth a prima facie claim of ineffective assistance of counsel. *Robbins*, 18 Cal. 4th at 810; *see also Sanders*, 21 Cal. 4th at 719-24. In *Bennett*, the Ninth Circuit held that that assessment—i.e., the determination of whether there exists a prima facie claim for relief under federal law—does not, alone, indicate that the procedural bar is dependent on federal law. *See Bennett*, 322 F.3d at 581 (holding that the timeliness bar is independent of federal law even where the state court measures delay "'from the time the petitioner or counsel knew, or reasonably should have known, of the information offered in support of the claim and the legal basis for the claim'" (quoting *Robbins*,

1   18 Cal. 4th at 787)); *see also id.* (quoting *Clark*, 5 Cal. 4th at 765 n.5 ("'Delay in seeking habeas

2   corpus . . . relief has been measured from the time a petitioner becomes aware of the grounds on

3   which he seeks relief.'")).

4          Accordingly, respondent has shown that, at the time of the purported timeliness default

5   occurred, California's timeliness bar was independent of federal law.  Because it was both

6   independent and adequate at the time of the state court determination, the timeliness bar

7   presumptively applies to claims 1.A, 1.D (to the extent it alleges ineffective assistance of

8   counsel), 1.E.2, 2.A, 2.B, 2.C, 2.D, 2.E, 3, 4, 5.A, 5.B, 5.C, 5.D, 5.E.1, 5.F.2, 5.F.4, 5.G, 5.H, 5.I,

9   5.K, 5.L, 5.M, 5.N, 5.O, 6.C, 7.A, 7.C, 7.D, 9, 10.A, 19.B, 19.C, 21.B, 27, and 31 of the Petition

10  for Writ of Habeas Corpus.

11  **IV.    Successor Bar**

12         Respondent argues that this court is barred from considering claims 1.A, 1.C, 1.D (to the

13  extent it alleges ineffective assistance of counsel), 1.F, 2.A, 2.B, 2.C, 2.D, 2.E, 3, 4, 5.A, 5.B, 5.C,

14  5.D, 5.E.1, 5.F.2, 5.F.4, 5.G, 5.H, 5.I, 5.K, 5.L, 5.M, 5.N, 5.O, 6.C, 7.A, 7.C, 7.D, 9, 10.A, 19.B,

15  19.C, 21.B, and 27 because the state court properly denied these claims as successive, i.e., they

16  could have been raised in a prior petition for writ of habeas corpus but were not.  ECF No. 56 at

17  2-199; ECF No. 73 at 1.  Petitioner does not dispute that these claims were denied as successive,

18  but, as with the timeliness bar, argues that this procedural bar is not adequate under *Coleman*, 501

19  U.S. at 729, because it is applied for the purpose of evading federal review of constitutional

20  claims and serves no legitimate state interest.  ECF No. 85 at 15-26.  He further argues that this

21  bar is not independent of federal law on the same grounds that he had raised in challenging

22  California's timeliness bar.  ECF No. 85 at 43-45.  The undersigned concludes that respondent

23  has shown that the successor bar, as applied here, is both independent and adequate.

24         In California, a habeas corpus petitioner must "present all known claims in a single,

25  timely petition for writ of habeas corpus."  *Clark*, 5 Cal. 4th at 767.  Thus, "absent a change in the

26  applicable law or the facts, the court will not consider repeated applications for habeas corpus

27  presenting claims previously rejected. . . . [and] refuse[s] to consider newly presented grounds for

28  relief which were known to the petitioner at the time of a prior collateral attack on the judgment."

16

1    *Id*. at 767-68 (internal citations omitted); *see also In re Morgan*, 50 Cal. 4th 932, 945 (2010) (in

2    habeas corpus cases, "all known claims must be brought in a single, timely habeas corpus

3    petition").

4          To show that California's successor bar is adequate, respondent must show that it was

5    clear, well-established, and consistently applied in capital cases at the time of the state court

6    adjudication. *See Bennett*, 322 F.3d at 586.  Respondent has pled that the successor bar is an

7    independent and adequate procedural bar, thus meeting his initial burden. *See* ECF No. 56 at 4;

8    *Bennet*, 322 F.3d at 585-86.

9          Petitioner challenges the adequacy of the successor bar on the same grounds on which he

10    challenges the timeliness bar.  ECF No. 85 at 15-26.  As petitioner notes, the California courts'

11    timeliness bar and successor bars are closely connected, as very often a successive petition is also

12    untimely.  ECF No. 85 at 2 n.4, 44-45 (citing *Carpenter v. Ayers*, 548 F. Supp. 2d 736, 755-56

13    (N.D. Cal. 2008), and *Dennis v. Brown*, 361 F. Supp. 2d 1124, 1135 (N.D. Cal. 2005)); *see Clark*,

14    5 Cal. 4th at 770 ("A successive petition presenting additional claims that could have been

15    presented in an earlier attack on judgment is, of necessity, a delayed petition.").  Nonetheless, the

16    legal analysis of these two bars must be, at present, distinct, since the Supreme Court and Court

17    of Appeals have determined that California's timeliness bar is independent and adequate, but no

18    such authority, exists regarding the adequacy and independence of California's successor bar.

19    *See Walker*, 562 U.S. 307; *Bennett*, 322 F.3d 573.

20          Despite this, the undersigned is not persuaded by petitioner's argument that, as with the

21    timeliness bar, the successor bar is not adequate because it serves no legitimate state interest and

22    is employed principally to stymie federal review of constitutional claims.  ECF No. 85 at 15-26.

23    Like the timeliness bar, the successor bar promotes the state's interest in efficient, prompt

24    resolution of challenges to criminal convictions and sentences. *See In re Friend*, 11 Cal. 5th 720,

25    728 (2021), *as modified* (Sept. 1, 2021) (the "successiveness bar was 'designed to ensure

26    legitimate claims are pressed early in the legal process'" (internal citation omitted)); *id.* at 737

27    (the successiveness bar seeks "to 'permit the resolution of legitimate claims in the fairest and

28    most efficacious manner possible'" (internal citation omitted)); *Clark*, 5 Cal. 4th at 770

1    ("Willingness by the court to entertain the merits of successive petitions seeking relief on the

2    basis of the same set of facts undermines the finality of the judgment.  Moreover, such piecemeal

3    litigation prevents the positive values of deterrence, certainty, and public confidence from

4    attaching to the judgment.").  And the California Supreme Court's practice of invoking the

5    successor bar as an alternative holding when also denying petitions on their merits does not

6    indicate that the bar is invoked to preclude federal review of constitutional claims; the court has

7    legitimate reasons for utilizing and articulating alternative holdings, as described above.

8         In passing, petitioner identifies certain district court cases holding that California's

9    successor bar is not adequate because it is not consistently applied in capital cases.  ECF No. 85

10   at 44-45 (citing *Dennis v. Brown*, 361 F. Supp. 2d 1124 (N.D. Cal. 2005) and *Carpenter v. Ayers*,

11   548 F. Supp. 2d 736, 755-56 (N.D. Cal. 2008), *reconsideration granted on other grounds sub*

12   *nom. Carpenter v. Chappell*, No. C 98-2444 MMC, 2014 WL 4684848 (N.D. Cal. Sept. 19,

13   2014)).  These cases are inapposite; they both considered the adequacy of procedural defaults

14   purportedly occurring prior to the California Supreme Court's 1998 decision in *Robbins*, wherein

15   the California Supreme Court expressly indicated that, going forward, it would "apply the

16   successiveness rule when . . .  faced with a petitioner whose prior petition was filed after the date

17   of finality of *Clark* [in 1993]."  *Robbins*, 18 Cal. 4th at 788 n.9; *see Carpenter*, 548 F. Supp. 2d at

18   755 (purported successive petition default occurred in 1996); *Dennis*, 361 F. Supp. 2d at 1130

19   (same).  Unlike the petitioners in *Dennis* and *Carpenter*, petitioner here has not "assert[ed]

20   specific factual allegations that demonstrate the inadequacy of the state procedure, including

21   citation to authority demonstrating inconsistent application of the rule," *see Bennett*, 322 F.3d at

22   586, at the time his purported default occurred, in 2002, several years after *Robbins*'

23   pronouncement.  *See Dennis*, 361 F. Supp. 2d at 1130-31 (describing data petitioner tendered to

24   show inconsistent application of successor bar by California Supreme Court in relevant time

25   period); *Carpenter*, 548 F. Supp. 2d at 755-56 (relying on *Dennis*).  As such, petitioner has not

26   met his burden to rebut respondent's assertion that the successor bar is adequate as applied to

27   petitioner.  *See Bennett*, 322 F.3d at 585-86.

28         Petitioner's arguments challenging the independence of the successor bar are no more

persuasive than they were when asserted against California's timeliness bar.  In denying the

claims at issue as successive, the California Supreme Court expressly invoked only state

procedural rules, citing only *Robbins*, 18 Cal. 4th at 788 n.9; *Clark*, 5 Cal. 4th at 767-68; and *In re Horowitz*, 33 Cal. 2d 534, 546-47 (1949), showing that it was not relying on federal law as a

basis for this denial.  *See Vang v. Nevada*, 329 F.3d 1069, 1074-75 (9th Cir. 2003).  Petitioner has

not shown that the California Supreme Court's application of the successor bar is "interwoven

with" application of federal law.  *See Long*, 463 U.S. at 1040-41.  In *Robbins*, the California

Supreme Court indicated that, as with the timeliness bar, in applying the successor bar it would

not examine the merits of a constitutional claim, but rather only consider the factual allegations

made indicating at the time the factual basis for a prima facie case became known to petitioner.

*See Robbins*, 18 Cal. 4th at 787-88 & n.9; *see generally Friend*, 11 Cal. 5th at 728, 730-31

(California Supreme Court undertakes same *Clark* analysis in applying a successor bar as it does

in applying a timeliness bar).  This, then, presents a situation indistinguishable from that raised in

*Bennett*, where the Ninth Circuit held that such an analysis does not suffice to demonstrate that

the state procedural bar is dependent on resolution of federal law.  *See Bennett*, 322 F.3d at 582.

Respondent has therefore shown that, at the time of the purported default, California's

successor bar was both independent of federal law and adequate.  This default, then, applies to

claims 1.A, 1.D (to the extent it alleges ineffective assistance of counsel), 2.A, 2.B, 2.C, 2.D, 2.E,

3, 4, 5.A, 5.B, 5.C, 5.D, 5.E.1, 5.F.2, 5.F.4, 5.G, 5.H, 5.I, 5.K, 5.L, 5.M, 5.N, 5.O, 6.C, 7.A, 7.C,

7.D, 9, 10.A, 19.B, 19.C, 21.B, and 27 of the Petition for Writ of Habeas Corpus, unless

petitioner can show reasons for excusing the default, as discussed *post*.

**V.      Application of the Timeliness Bar or Successor Bar to Claims 1.C and 1.F**

Petitioner argues that the federal courts should not defer to the timeliness or successor

bars applied to claims 1.C and 1.F in his second state habeas corpus proceedings, because the

California Supreme Court applied these bars in error as a matter of state law—since, per

petitioner, both of these subclaims had been raised in his first state petition.  ECF No. 85 at 7-9.

Review of the record indicates that petitioner is correct: the state court improperly invoked

procedural bars against these subclaims when they were raised in his second petition for writ of

19

1   habeas corpus, and therefore this court should not defer to those procedural bars.  *See, e.g.*, *James*

2   *v. Kentucky*, 466 U.S. 341, 351 (1984) (holding that a habeas corpus claim was not barred from

3   federal court review on the basis of the state court's application of a procedural bar where the

4   record revealed that the petitioner had not violated the relevant state procedural rule); *Sivak v.*

5   *Hardison*, 658 F.3d 898, 907 (9th Cir. 2011) ("Here, the state court applied the state's procedural

6   rule to [petitioner's] case in an erroneous and arbitrary manner.  Thus, we follow the Supreme

7   Court and our sister circuits in holding that an erroneously applied procedural rule does not bar

8   federal habeas review.").

9          The record indicates that petitioner had presented in his first state petition the same

10   fundamental legal theory and factual allegations that comprise subclaim 1.C. in his Petition for

11   Writ of Habeas Corpus in this Court.  In claim 1.C, petitioner alleges that juror Edmonds was

12   actually biased against him because he had a strong emotional reaction to the evidence presented

13   at the guilt phase, indicating a "'substantial emotional involvement' with the case for which he

14   should have been disqualified, because, over the course of the trial, he indicated that the

15   homicides were difficult to contemplate because they persistently reminded him of the death of

16   his sister-in-law.  ECF No. 29 at 28-30 (citing *Bayrmoglu v. Estelle*, 806 F.2d 880, 889 n.10 (9th

17   Cir. 1986) and *United States v. Allsup*, 566 F.2d 68, 71 (9th Cir. 1977)).  In his first state petition,

18   he also had alleged that there was a substantial likelihood of juror Edmonds' bias against him, due

19   to his failure to have revealed to the trial court the distress that he experienced when the homicide

20   of Ms. Cimmino reminded him of his deceased sister-in-law.  LD 30 at 36-41.  There, petitioner

21   alleged that Mr. Edmonds' non-disclosure reflected both actual bias and implied bias, the latter

22   theory reflecting that, because Mr. Edmonds' non-disclosure appeared willful, his actual bias

23   could be presumed.  LD 30 at 36, 43-44.  In his informal reply brief in state court, petitioner

24   clarified that "the existence of actual bias vel non is the question" at the crux of the subclaim.  LD

25   33 at 5.

26          The record does not support respondent's characterization that, in state court, petitioner

27   had only asserted a claim of implied bias, not actual bias.  ECF No. 73 at 1.  Instead, the record

28   demonstrates that, in both his petition and reply in support of his petition, he characterized this

1   subclaim as alleging that juror Edmonds was actually biased.  LD 30 at 36; LD 33 at 5.

2   Consistent with jurisprudence, he argued that the totality of juror Edmonds' conduct during voir

3   dire and during the trial indicated a failure to be forthcoming, which may be treated as

4   presumptive evidence of actual bias.  LD 30 at 36, 43-44 (citing *Dyer v. Calderon*, 151 F.3d 970,

5   981-82 (9th Cir. 1998)).  In sum, the record reflects that the allegations contained in subclaim 1.C

6   were fairly presented to the state court in petitioner's first state petition.  *See generally Duncan v.*

7   *Henry*, 513 U.S. 364, 365-66 (1995) (per curiam) (holding that, to exhaust a federal habeas

8   corpus claim, a petitioner must explicitly present to the state court his legal theory setting forth

9   the federal constitutional provision that he alleges was violated, as well as the factual basis for his

10  claim); *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986) (stating that federal courts will treat a

11  habeas claim as exhausted so long as any additional allegations made in the federal proceeding

12  did not "fundamentally alter the legal claim already considered by the state courts").

13  Consequently, the state court was in error when it applied the timeliness and successor bars to

14  subclaim 1.C, after petitioner had reasserted the allegations comprising this subclaim in his

15  second state petition for writ of habeas corpus.  *See* ECF No. 32 at 51-54; LD 40 at 1.  As such, it

16  would be improper for this court to defer to the state court's denial of relief on these allegations

17  on the basis that they were raised untimely and in a successive habeas corpus petition.  *See James*,

18  466 U.S. at 351; *Sivak*, 658 F.3d at 907.

19       The same result obtains for subclaim 1.F.  In claim 1.F, petitioner alleges that juror

20  Edmonds should have been disqualified due to the aggregate effect of the bias alleged in claim

21  1.C, his racial bias, and his knowledge of petitioner's prior convictions and death sentence.  ECF

22  No. 29 at 37-38.  In his first state petition, petitioner alleged that the totality of the record,

23  including the bias alleged in claim 1.C and his racial bias, demonstrated a "substantial likelihood

24  that juror Edmonds was . . . actually biased against" him.  LD 30 at 44.  As with his allegations

25  comprising now-subclaim 1.C, petitioner argued that the totality of Mr. Edmonds' conduct,

26  including his failure to be forthcoming with the trial court, raised a presumption of prejudice.  LD

27  30 at 43-44.  Thus, it is not the case, as respondent argues, that petitioner had "only asserted

28  implied bias based on juror misconduct."  *See* ECF No. 73 at 1.  And, when petitioner re-raised

21

1    these allegations as subclaim 1.F in his second state petition, *see* ECF No. 32 at 63-64, the state

2    court erred in concluding that these allegations had not been previously raised, and that they were

3    thus barred as untimely and successive, *see* LD 40 at 1, and these procedural bars are not entitled

4    to deference by this court, *see James*, 466 U.S. at 351; *Sivak*, 658 F.3d at 907.

5           For these reasons, respondent has not shown that subclaims 1.C and 1.F should be

6    dismissed due to the California Supreme Court's application of procedural bars against these

7    subclaims when they were raised in petitioner's second state petition.  Respondent's motion

8    should be denied as to these subclaims.

9    **VI.    Claims That Could Have Been Raised on Appeal**

10          Respondent argues that the state court properly denied claims 3, 4, 7.A, 7.C, 7.D, 9, 10.A,

11   and 21.B on the grounds that they could have been raised on appeal but were not.  ECF No. 56 at

12   28-33, 71-75, 76-86, 92-94.  Petitioner argues that, as with the timeliness and successor bars, this

13   bar serves no legitimate state interest and is applied by the California Supreme Court to frustrate

14   federal courts' review of constitutional claims.  ECF No. 85 at 15-26.  Petitioner also argues that

15   this procedural bar is not independent of federal law because, under California jurisprudence, the

16   California courts may opt not to apply it when the error asserted reflects a fundamental

17   constitutional error.  ECF No. 85 at 47.  The undersigned concludes that respondent has shown

18   that this bar merits deference for the claims at issue.

19          As with the successor bar, a habeas claim may be defaulted because it could have been

20   raised on direct appeal but was not.  *See In re Dixon,* 41 Cal. 2d 756, 759 (1953).  This is

21   commonly referred to as the "*Dixon* bar."  *See, e.g.*, *Johnson v. Lee*, 578 U.S. 605, 606 (2016)

22   (per curiam).

23          The United States Supreme Court has foreclosed petitioner's argument that the *Dixon* bar

24   is not adequate under *Coleman*.  In *Johnson*, 578 U.S. at 606, the Supreme Court reviewed the

25   California Supreme Court's application of the *Dixon* bar, where the default purportedly had

26   occurred in 1999, and concluded that it is "adequate" because it "is longstanding, oft-cited, and

27   shared by habeas courts across the Nation."  It further held that there were no indications "that

28   California courts apply the *Dixon* bar in a way that disfavors federal claims."  *Id.* at 609.  Here,

1  petitioner offers no data to contradict this conclusion, as of the year 2000, the time of his

2  purported default.  *See* ECF No. 85 at 15-26; *see also* LD 21 (opening brief on direct appeal filed

3  in 2000).  He gains no traction with his argument that the California Supreme Court's practice of

4  invoking this bar—as well as, in the alternative, denying a claim on the merits—reflects that it

5  has the purpose of frustrating federal review of federal claims.  As with the successor bar, the

6  application of the *Dixon* bar serves the state interests of promoting finality and timely

7  administration of justice post-judgment.  *Johnson*, 578 U.S. at 611-12; *Robbins*, 18 Cal. 4th at

8  778 n.1.  And, as described above, nefarious motive cannot be inferred from a court's articulation

9  of alternative bases for its judgments.  In sum, because respondent has pled that the *Dixon* bar is

10  adequate, *see* ECF No. 56 at 29, and petitioner has not met his burden to show that it is not, the

11  undersigned concludes that the *Dixon* bar is adequate within the meaning of *Coleman*, 501 U.S. at

12  750.

13        The *Dixon* bar is also independent of federal law.  Although the Ninth Circuit had

14  previously held that it was not, that decision predated *Robbins*.  *See Park v. California*, 202 F.3d

15  1146, 1152-53 (9th Cir. 2000).  In *Robbins*, the California Supreme Court acknowledged that,

16  while its application of the *Dixon* bar impliedly reflected that it had rejected the "fundamental

17  constitutional error" exception to the bar, it "would no longer determine whether an error alleged

18  in a state petition constituted a federal constitutional violation."  *Robbins*, 18 Cal. 4th at 811-12 &

19  n.34; *see Bennett*, 322 F.3d at 581; *cf. Park*, 202 F.3d at 1152-53 (explicitly confining its holding

20  to cases predating *Robbins*).  While this pronouncement was made specifically regarding the

21  application of the timeliness bar, *see Robbins*, 18 Cal. 4th at 811-12, 814, it seems appropriately

22  applied to the *Dixon* bar as well.  The California Supreme Court had previously recognized that

23  the *Dixon* bar is intimately linked to the timeliness bar, as they have a common purpose: to avoid

24  unnecessary delay in the achievement of finality in criminal cases and to encourage convicted

25  persons to promptly pursue any remedies available to them.  *In re Harris*, 5 Cal. 4th 813, 825-29

26  & n.3 (1993); *see also Robbins*, 18 Cal. 4th at 814 n.34 (citing same).  In *Robbins*, the California

27  Supreme Court explained that it was "aware that federal courts will not honor bars that rest

28  'primarily' on resolution of the merits of federal claims, or that are 'interwoven' with such

claims," 18 Cal. 4th at 812 n.32 (quoting *Coleman*, 501 U.S. at 734-36), and for that reason, it would not engage in a merits analysis of federal constitutional law as a basis for rejecting a habeas corpus claim as untimely.  18 Cal. 4th at 811-12.  The Ninth Circuit has understood this holding to reflect that "[t]he purpose of this approach was to establish the adequacy and independence of the State Supreme Court's future *Dixon* /*Robbins* rulings and to indicate that a prisoner seeking collateral relief with respect to new federal claims no longer had any recourse to exhaust in the state courts."  *Park*, 202 F.3d at 1153 n.4.  Hence, after *Robbins*, California courts apparently apply the *Dixon* bar exceptions without examination of the merits of any federal constitutional allegations.  *See Roybal v. Davis*, 148 F. Supp. 3d 958, 987 (S.D. Cal. 2015) (concluding same); *Protsman v. Pliler*, 318 F. Supp. 2d 1004, 1006-08 (S.D. Cal. 2004) (same).  The undersigned, therefore, finds that, at the time of the purported default, the *Dixon* bar was applied in manner independent of federal law.

Respondent has therefore shown that, at the time of the purported default, California's *Dixon* bar was both adequate and independent of federal law.  This default, then, applies to claims 3, 4, 7.A, 7.C, 7.D, 9, 10.A, and 21.B of the Petition for Writ of Habeas Corpus, unless petitioner can show reasons to excuse the default, as discussed *post*.

### VII.    Claims That Have Been Raised and Rejected in Prior Proceedings

Respondent argues that four claims in petitioner's second state petition were denied by the California Supreme Court as having been raised and rejected in prior proceedings.  These include the claim respondent identifies as 1.E.2, as well as claims 7.B, 11, and 28.

### A.  Claim 1.E.2

In claim 1.E in his second state petition, petitioner alleged that juror Edmonds committed misconduct by, first, discussing with other jurors a photograph of the victim and, second, by discussing his sister-in-law's death.  ECF No. 32 at 60-63.  The latter allegation respondent describes as "claim 1.E.2."  ECF No. 56 at 11-15; *see* ECF No. 85 at 1 n.2.  Respondent argues that the allegations comprising claim 1.E.2 were procedurally defaulted by the state court's denial of petitioner's second state petition on several grounds: "because it was 'untimely,' 'raised and rejected on appeal,' and 'raised and rejected in petitioner's prior petition for writ of habeas corpus

1    (S117268).'"  ECF No. 56 at 13 (citing LD 40 at 1).

2         Review of the record does not support respondent's argument that these allegations were

3    denied in state court because they had been raised and rejected on appeal.  In addressing claim

4    1.E, the California Supreme Court ruled that the subclaim in its entirety was denied on the merits

5    and as untimely; "with respect to Edmonds's request during trial," was denied for having been

6    raised and rejected on appeal; and "with respect to Edmonds's comment during deliberations,"

7    was denied for having been raised and rejected in a prior petition for writ of habeas corpus.  LD

8    40 at 1.  Thus, the record indicates that the allegations identified now as subclaim 1.E.2—alleging

9    that Edmonds made improper comments during deliberations about his sister-in-law—was not

10   denied on the basis that it was raised and rejected on appeal.  Respondent, therefore, fails to meet

11   his burden to show that this particular bar precludes the federal court's consideration of the claim.

12   *See Bennett*, 322 F.3d at 585-86.

13        To the extent that the California Supreme Court denied relief on these allegations because

14   they had been previously raised and rejected in an earlier habeas corpus proceeding, this does not,

15   without more, preclude federal review.  Where a state court has ruled that it would not entertain

16   repeated habeas corpus claims, that ruling "neither rests upon procedural default nor lifts a pre-

17   existing procedural default, [and] its effect upon the availability of federal habeas is nil."  *Ylst v.*

18   *Nunnemaker*, 501 U.S. 797, 804 n.3 (1991).  Instead, the federal court "should look through the

19   later decision to the last reasoned state court opinion" as constituting the reasons for the state

20   court denial.  *Id.* at 804.  Here, therefore, although the California Supreme Court denied the

21   allegations comprising claim 1.E.2 because, inter alia, the allegations had been previously raised

22   and rejected in a prior habeas corpus proceeding, that ruling does not constitute a procedural bar

23   that precludes this court's review of the allegations.[8]  *See id.* at 804 n.3.

24        Consequently, although respondent has shown that, facially, the state court's application

25   of a timeliness bar on the allegations comprising claim 1.E.2 is entitled deference by this court, as

26   _____

27   [8] Respondent makes no argument either as to the basis on which the state court had denied
relief on these allegations in petitioner's first state habeas corpus proceeding, or that that denial—
whatever its basis—was such that it precludes this court's merits review of the subclaim.  *See*
28   ECF No. 56 at 13-15.

explained *supra*, he has not shown that this court should deny the subclaim summarily either because it had been raised and rejected on appeal, or because it had been raised and rejected in a first habeas corpus proceeding, prior to having been raised and rejected in petitioner's second state court habeas corpus proceeding.

### B. Claims 7.B, 11, and 28

Respondent asserts that claims 7.B, 11, and 28 were procedurally defaulted by the state court on the independent and adequate grounds that petitioner failed to object or seek a remedy in the trial court when the purported errors occurred, commonly referred to as the contemporaneous objection rule. ECF No. 56 at 75, 86, 97. Petitioner argues that this rule is not adequate, because it was not firmly established and regularly applied at the time of his trial, and because it is not independent of federal law. ECF No. 89 at 27-37, 48-49. The undersigned concludes that respondent has met his burden to show that these claims are procedurally barred.

Claims 7.B, 11, and 28 of the Petition for Writ of Habeas Corpus were all raised twice in the state court: first on direct appeal and again in petitioner's second petition for writ of habeas corpus. ECF No. 32 at 249-51, 277-79, 376-78; LD 21 at 153-62, 185-89, 261-65. In denying the claims in habeas corpus, the California Supreme Court ruled that they had been previously raised and rejected on direct appeal. LD 40 at 1.[9] Pursuant to *Ylst*, 501 U.S. at 804, therefore, this court considers whether the default asserted on direct appeal is entitled to deference. On direct appeal, the California Supreme Court denied each of these claims on the basis that they were defaulted because petitioner did not object at trial. *Holloway*, 33 Cal. 4th at 129-30, 136, 152. Petitioner disputes neither that this default was applied nor that he failed to raise a relevant objection at trial. ECF No. 85 at 28-29.

Under California statutory and decisional law, a criminal defendant must make a timely and specific objection at trial in order to preserve a claim for appellate review. *See* Cal. Evid.

---

[9] The California Supreme Court confined this ruling to all allegations comprising these claims, except to the extent they alleged ineffective assistance of counsel. LD 40 at 1. In his Petition for Writ of Habeas Corpus in this Court, petitioner has not advanced ineffective assistance allegations in claims 7.B, 11, or 28, *see* ECF No. 29 at 176-78, 198-99, 271-73, thus this aspect of the state habeas corpus ruling is irrelevant to the claims pending before this court.

1   Code § 353; *People v. Ramos*, 15 Cal. 4th 1133, 1171 (1997); *People v. Green*, 27 Cal. 3d 1, 27

2   (1980).  The Ninth Circuit has repeatedly held that this rule is independent of federal law.  *See,*

3   *e.g.*, *Fairbank v. Ayers*, 650 F.3d 1243, 1256 (9th Cir. 2011); *Paulino v. Castro*, 371 F.3d 1083,

4   1093 (9th Cir. 2004); *Melendez v. Pliler*, 288 F.3d 1120 (9th Cir. 2002); *cf. Fauber v. Davis*, 43

5   F.4th 987, 1002 (9th Cir. 2022) (assuming without deciding that the California contemporaneous

6   objective rule was independent); *Zapien v. Martel*, 849 F.3d 787, 793 n.2 (9th Cir. 2016) (same);

7   *Tong Xiong v. Felker*, 681 F.3d 1067, 1075 (9th Cir. 2012) (same); *Inthavong v. Lamarque*, 420

8   F.3d 1055, 1058 (9th Cir. 2005) (same); *Rich v. Calderon*, 187 F.3d 1064, 1070 (9th Cir. 1999)

9   (same); *Vansickel v. White*, 166 F.3d 953, 957 (9th Cir. 1999) (same); *Bonin v. Calderon*, 59 F.3d

10  815, 842-43 (9th Cir. 1995) (same); *Hines v. Enomoto*, 658 F.2d 667, 673 (9th Cir. 1981) (same);

11  *see also Carpenter*, 548 F. Supp. 2d at 746 ("It is well-established that California's

12  contemporaneous objection requirement is independent of federal law.").  Although petitioner

13  cites a handful of cases where the California appellate courts have failed to apply this bar, instead

14  reaching the merits of an unobjected-to federal constitutional error, *see* ECF No. 85 at 49, that

15  alone does not demonstrate that the bar itself relies on resolution of federal law or that it is

16  intrinsically intertwined with resolution of federal law.  *See Fauber*, 43 F.4th at 1002; *see*

17  *generally Walker*, 562 U.S. at 316 (procedural bar may be independent and adequate even if it is

18  discretionary); *cf. Carpenter*, 548 F. Supp. 2d at 746-49 (aberrational cases wherein the California

19  appellate courts failed to apply the contemporaneous objection bar did not impugn the adequacy

20  or independence of the bar).  Respondent has therefore met his meager burden of showing that the

21  rule is independent—and petitioner has not rebutted this showing.  *See Bennett*, 322 F.3d at 585-

22  86.

23          Respondent has also met his burden of showing that the contemporaneous objection rule is

24  adequate.  *See* ECF No. 56 at 86-87.  Petitioner argues that it is not firmly established and

25  regularly applied because the California courts have declined to apply it in some instances and

26  have carved out exceptions to it.  ECF No. 85 at 26-37.  In response, respondent has directed the

27  court to a raft of California decisions in which California appellate courts have held an error

28  forfeited because it was not preserved at trial, at the time of petitioner's trial and before.  ECF No.

73 at 6; *see* 6 Witkin, Cal. Crim. Law 4th Rev Error §§ 45-49 (2023) (collecting cases).  The

cumulation of these cases supports the conclusion that, in California, "the general forfeiture

doctrine is too well established to be questioned."  *Id.* § 41.

The Supreme Court's decision in *Walker* forecloses petitioner's argument that the

contemporaneous objection rule is not regularly applied, for purposes of the *Coleman* analysis,

because there have been numerous instances wherein the California courts chose not to apply it.

*See* ECF No. 85 at 31-35.  In *Walker*, the Supreme Court held that a "discretionary state

procedural rule . . . can be 'firmly established' and 'regularly followed,'. . . 'even if the

appropriate exercise of discretion may permit consideration of a federal claim in some cases but

not others" and "ought not be disregarded automatically upon a showing of seeming

inconsistencies."  *Walker*, 562 U.S. at 316, 320 (quoting *Beard v. Kindler*, 558 U.S. 53, 60-61

(2009)).  The instances cited by petitioner appear merely to demonstrate the exercise of discretion

by California appellate courts, rather than that the contemporaneous objection bar is "applied

infrequently, unexpectedly, or freakishly" by the California courts.  *See id.* at 320; *see also*

*Carpenter*, 548 F. Supp. 2d at 746-49 (concluding same).

Petitioner's descriptions of exceptions to the contemporaneous objection rule also fail to

show that it was not adequate.  The exceptions on which petitioner relies do not apply to his

claims at issue, and therefore are immaterial to the question of whether this bar was adequate to

put him on notice of the need to object at trial.  *See Walker*, 562 U.S. at 320 (a procedural bar

may be inadequate when it reflects that the reviewing court's discretion has been exercised

against him in a "surprising," "novel," or "unforeseen" manner); *Bradford v. Davis*, 923 F.3d

599, 611 (9th Cir. 2019) (procedural bar "adequate" where the rules governing it gave petitioner

notice as to what he had to do to avoid its application to him); *Lee v. Jacquez*, 788 F.3d 1124,

1128 (9th Cir. 2015), *rev'd on other grounds sub nom. Johnson v. Lee*, 578 U.S. 605 (2016)

("The adequacy requirement exists to . . . 'ensure that [litigants] have fair notice of what they

must do to avoid default.'" (internal citation omitted)); *Bargas v. Burns*, 179 F.3d 1207, 1212 (9th

Cir. 1999) (a procedural bar must be "sufficiently clear as to put a petitioner on notice that he

must raise all claims or risk default . . . "); *Karis v. Vasquez*, 828 F. Supp. 1449, 1464 (E.D. Cal.

28

1   1993) (to be adequate, procedural bar should "provide petitioners with adequate notice of the

2   circumstances that will bar their claims"); *Cabrera v. Barbo*, 175 F.3d 307, 313 (3rd Cir. 1999)

3   ("The reason for these requirements is that a petitioner should be on notice of how to present his

4   claims in the state courts if his failure to present them is to bar him from advancing them in a

5   federal court.").

6        Neither claim 7.B, nor claim 11, nor claim 28 appear to implicate any of the exceptions

7   identified by petitioner, and petitioner makes no argument that they would have applied to any of

8   the claims at issue.  Petitioner identifies cases in which the California appellate courts have opted

9   not to apply the contemporaneous objection rule to bar a merits review of the claim where the

10  appellant has argued: (1) inadmissible evidence was introduced that impelled the defendant to

11  testify; (2) the error concerned admissibility of statements under *Miranda v. Arizona*, 384 U.S.

12  486 (1966); (3) evidence of the defendant's prior violent acts was admitted in violation of his due

13  process rights; (4) defense counsel did lodge an objection, though it was not in the proper form;

14  (5) there was indication on the record that an objection would have been futile; or (6) the claim of

15  error is premised on an unanticipated change in the law that occurred after trial.  ECF No. 85 at

16  30-32.  None of these circumstances, however, appear implicated by the proceedings at issue.  *See*

17  ECF No. 29 at 176-78, 198-99, 271-73; LD 21 at 153-62, 185-89, 261-65; LD 19, Vol. 6 at 1670-

18  73, Vol. 19 at 6226-46, Vol. 22 at 7166, Vol. 23 at 7289, Vol. 25 at 8019, Vol. 26 at 8121-22; *see*

19  *also Holloway*, 33 Cal. 4th at 129-30, 136, 152.  Hence, the existence of these exceptions, as

20  applied in other cases, does not demonstrate that petitioner lacked clear notice of the

21  contemporaneous objection rule as relevant to claims 7.B, 11, or 28 of the Petition for Writ of

22  Habeas Corpus.

23        In sum, respondent has shown that the contemporaneous objection rule was adequate at

24  the time of petitioner's trial, and petitioner has not successfully rebutted this showing.  *See*

25  *Bennett*, 322 F.3d at 585-86.  The undersigned therefore joins a vast assemblage of jurists in

26  concluding that California's contemporaneous objection rule satisfied *Coleman*'s standard at the

27  time of petitioner's 1992 trial.  *See, e.g.*, *Fauber*, 43 F.4th at 1002 (1988 trial); *Fairbank*, 650

28

F.3d at 1256 (1989 trial)[10]; *Zapien*, 849 F.3d at 793 n.2 (1987 trial); *Rich*, 187 F.3d at 1070 (1980

trial); *Bonin*, 59 F.3d at 842-43 (1983 trial)[11]; *Garrison v. McCarthy*, 653 F.2d 374, 377 (9th Cir.

1981); *Carpenter*, 548 F. Supp. 2d at 746-49 (1984 trial).  This court must defer to the state

court's dismissal of claims 7.B, 11, and 28, unless petitioner shows a reason to disregard the

default, as addressed *post*.

## VIII.   Cause and Prejudice

For the claims in which respondent has asserted a procedural bar, petitioner has argued

that his counsel's ineffectiveness served as cause and prejudice for this court to decline to apply

the bar.  ECF No. 85 at 51-58.  Petitioner therefore requests that, should the undersigned

determine that a procedural bar invoked by the state court is facially entitled to deference, the

undersigned defer ruling on whether cause and prejudice exist until the court proceeds to a merits

determination on the ineffectiveness allegations.  ECF No. 85 at 56-58.

The Supreme Court has held that defense counsel's ineffectiveness may constitute "cause"

in a cause-and-prejudice analysis, where that ineffectiveness reflected a denial of the petitioner's

constitutional right to counsel.  *Davila v. Davis*, 582 U.S. 521, 528 (2017); *Edwards v. Carpenter*,

529 U.S. 446, 451 (2000).  Ergo, where the default occurred at trial, a habeas petitioner may

claim that his trial counsel's ineffectiveness caused a procedural default, as he has a constitutional

right to effective trial counsel.  *See Davila*, 582 U.S. at 528.  Similarly, where a claim for relief

should have been brought on direct appeal, appellate counsel's failure may constitute "cause" to

disregard a procedural default applied to that claim.  *Coleman v. Thompson*, 501 U.S. 722, 754

(1991); *see Trevino v. Thaler*, 569 U.S. 413, 422 (2013); *Martinez*, 566 U.S. at 11.

In contrast, the federal court is more limited in its ability to recognize state habeas corpus

counsel's ineffectiveness as cause for excusing a procedural default, because a convicted person

does not have a constitutional right to counsel in state habeas corpus proceedings.  *See Coleman*,

501 U.S. at 755-56.  The Supreme Court has held, however, that where a state has required

certain claims to be brought in state habeas corpus proceedings—rather than on direct appeal—

---

[10] *See People v. Fairbank*, 16 Cal. 4th 1223, 1231-32 (1997).
[11] *See People v. Bonin*, 43 Cal. 3d 659, 675 (1988).

1  and where the state habeas petitioner's counsel has been ineffective under the Sixth Amendment

2  by failing to raise meritorious claims in that proceeding, that attorney's ineffectiveness can

3  constitute "cause." *Martinez*, 566 U.S. at 9; *Trevino*, 569 U.S. at 428; *see also Murray v. Carrier*,

4  477 U.S. 478, 488 (1986); *Leeds v. Russell*, 75 F.4th 1009, 1016-17 (9th Cir. 2023).  One

5  limitation on this rule is that a petitioner may not rely on his habeas corpus counsel's

6  ineffectiveness as cause to excuse the default of an underlying claim that petitioner received

7  ineffective assistance of counsel on appeal.  *Davila*, 582 U.S. at 528-38.

8         The Supreme Court has recently acknowledged restrictions on the evidence that a federal

9  court may consider in determining whether petitioner's prior counsel's ineffectiveness constitutes

10  cause to excuse a default applied to a habeas corpus claim.  In *Shinn v. Ramirez*, 596 U.S. 366

11  (2022), the Supreme Court held that, when a petitioner has alleged ineffectiveness of his state

12  postconviction counsel as the cause to excuse the default on a claim, the evidence of that

13  ineffectiveness—i.e., the evidence on which the petitioner intends to rely to prove "cause" in a

14  cause-and-prejudice analysis—must either appear in the state court record or may only be

15  developed in federal court if petitioner shows that the requirements of 28 U.S.C. section

16

17

18

19

20

21

22

23

24

25

26

27

28

31

2254(e)(2)[12] have been met.[13]

### A.  Claim 31 Must Be Dismissed

Considering the nature of its allegations, claim 31 must be addressed separately.  In claim 31, petitioner alleges that he received unconstitutional ineffective counsel both on direct appeal and in his state habeas corpus proceedings.  ECF No. 29 at 279-81.  Petitioner raised this claim in his second state petition, which the California Supreme Court summarily denied on the merits and as untimely.  LD 40 at 1; *see* ECF No. 56 at 99 (arguing same).  In this proceeding, petitioner attacks the validity of the timeliness bar, as discussed above, and alternatively argues that the timeliness bar should be excused due to his counsel's ineffective assistance in state appellate and habeas corpus proceedings.  ECF No. 85 at 51-56.

The United States Supreme Court has explained that because "a federal habeas court may

---

[12] That section provides:

> (2) If the [habeas corpus] applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
>
> (A) the claim relies on—
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e).

[13] The undersigned is aware that the Supreme Court's holding in *Shinn* may limit the evidentiary mechanisms available to petitioner in proving cause and prejudice, and that the law in effect at the time of the parties' instant briefing may have differed.  Nonetheless, *Shinn* binds this court.  Should petitioner wish for this court to consider additional factual allegations in support of his cause-and-prejudice arguments, any such allegations would need to be exhausted in the state court, or petitioner would need to meet section 2254(e)'s standard.  *See Shinn*, 596 U.S. at 382-84; *see, e.g.*, *Contreras v. Broomfield*, No. 1:19-cv-01523-JLT, 2024 WL 86604 (E.D. Cal. Jan. 8, 2024).

1   *never* 'needlessly prolong' a habeas case," *Shinn*, 142 S. Ct. at 1739 (quoting *Pinholster*, 563

2   U.S. at 209 (Sotomayor, J., dissenting) (italics in original)), the federal court may not allow

3   evidentiary development to support the non-application of a procedural bar under the cause-and-

4   prejudice doctrine "if the newly developed evidence never would 'entitle [the prisoner] to federal

5   habeas relief,'" *id.* (quoting *Shriro v. Landrigan*, 550 U.S. 465, 474 (2007)), whether because the

6   ineffective assistance of counsel allegations forming petitioner's cause and prejudice argument

7   are somehow flawed, or because the underlying habeas corpus claim itself is meritless.  *Shinn*,

8   142 S.Ct. at 1737, 1739; *see also Coleman*, 501 U.S. at 755.  Here, both circumstances are

9   present, requiring dismissal of this claim.

10       To the extent claim 31 alleges that petitioner was denied a federal constitutional right to

11  effective state habeas corpus counsel, those allegations must be dismissed as non-cognizable.

12  There is no constitutional right to counsel in state post-conviction proceedings, let alone effective

13  counsel.  *Davila*, 582 U.S. at 529; *Murray v. Giarratano*, 492 U.S. 1 (1989) (plurality opinion);

14  *see Shinn*, 142 S.Ct. at 1735.  Therefore, petitioner's allegations do not state a claim on which

15  relief could be granted, as a matter of law, and these allegations should be dismissed at this stage.

16  *See Shinn*, 142 S.Ct. at 1739; *Schriro*, 550 U.S. at 474-75; *Franklin v. Johnson*, 290 F.3d 1223,

17  1232 (9th Cir. 2002); *see Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005).

18       To the extent claim 31 alleges that petitioner was denied his federal constitutional rights to

19  effective counsel on direct appeal, these allegations must be dismissed because, for this specific

20  type of claim, the United States Supreme Court has held that defense counsel's ineffectiveness

21  cannot constitute cause and prejudice to excuse procedural default.  In *Davila*, 582 U.S. 521, the

22  Court considered this issue specifically, holding that the federal courts are not empowered, under

23  the cause-and-prejudice doctrine, "to hear a substantial, but procedurally defaulted, claim of

24  ineffective assistance of appellate counsel when a prisoner's state postconviction counsel

25  provides ineffective assistance by failing to raise that claim."  582 U.S. at 529.  Consequently,

26  because these allegations are facially barred under California's timeliness doctrine and

27  petitioner's theory of cause and prejudice to excuse the default is foreclosed as a matter of law,

28  this court must grant respondent's motion as to claim 31, to the extent it that alleges ineffective

assistance of appellate counsel.  *See Shinn*, 142 S.Ct. at 1739; *Schriro*, 550 U.S. at 474-75; *Hurles v. Ryan*, 914 F.3d 1236 (9th Cir. 2019).

In sum, because some of the allegations of claim 31 fail to state a claim of federal constitutional error, and the remaining allegations cannot be excused from their procedural default, respondent's motion should be granted as to claim 31, and the claim should be dismissed in its entirety.

### B. *Claims For Which State Habeas Counsel's Ineffectiveness Would Be the Cause to Excuse Procedural Default*

As described above, the California Supreme Court dismissed as procedurally barred claims 1.A, 1.D (to the extent it alleged ineffective assistance of counsel), 1.E.2, 2.A, 2.B, 2.C, 2.D, 2.E, 3, 4, 5.A, 5.B, 5.C, 5.D, 5.E.1, 5.F.2, 5.F.4, 5.G, 5.H, 5.I, 5.K, 5.L, 5.M, 5.N, 5.O, 6.C, 7.A, 7.C, 7.D, 9, 10.A, 19.B, 19.C, 21.B, and 27 for reasons that may be attributable to the ineffective performance of state habeas corpus counsel, ruling that these claims were untimely or should have been raised in a prior habeas corpus proceeding, or both.  LD 40 at 1.  Thus, for these claims, petitioner asserts that state habeas corpus counsel's deficient performance caused any default.  ECF No. 85 at 52-55.

Petitioner asks that this court defer resolution of this issue until such time as it resolves the merits of the underlying claims, since the "prejudice" element of a cause-and-prejudice analysis would require the court to analyze the merits of the underlying constitutional claim.  ECF No. 85 at 49-51.  Prior to the United States Supreme Court's decision in *Shinn*, that approach may have reflected an efficient use of the court's limited resources.  *See* ECF No. 85 at 50 (collecting cases).  *Shinn*, however, restricted the Court's consideration of evidence on the "cause" prong of the cause-and-prejudice analysis, and such limitation seems dispositive to petitioner's assertion of the cause-and-prejudice exception as to claims 1.A, 1.D (to the extent it alleges ineffective assistance of counsel), 1.E.2, 2.A, 2.B, 2.C, 2.D, 2.E, 3, 4, 5.A, 5.B, 5.C, 5.D, 5.E.1, 5.F.2, 5.F.4, 5.G, 5.H, 5.I, 5.K, 5.L, 5.M, 5.N, 5.O, 6.C, 7.A, 7.C, 7.D, 9, 10.A, 19.B, 19.C, 21.B, and 27.

Under *Shinn*, petitioner has two evidentiary mechanisms to prove his allegations of state

1   habeas counsel's ineffectiveness: either such evidence must appear in the state court record, or

2   petitioner must show that he can meet section 2254(e)(2)'s requirements for an evidentiary

3   hearing in federal court.  *Shinn*, 142 S.Ct. at 1734.  In order to prove that his counsel was

4   deficient under *Strickland*, he must show that his state habeas corpus counsel's performance fell

5   below an objective standard of reasonableness, i.e., that reasonably competent counsel at the time

6   would have performed differently.  *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010) (citing

7   *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).  This includes, at a minimum, some

8   showing as to why counsel undertook certain actions on behalf of petitioner and forewent others;

9   what the standard of care was at the time of state habeas counsel's representation; or, in some

10   circumstances, that counsel's actions were so facially unreasonable as to be necessarily deficient.

11   *Strickland*, 466 U.S. at 687-91; *see Shinn*, 142 S.Ct. at 1739-40 (recognizing that state habeas

12   counsel may have had strategic reasons for failing to present certain claims in state habeas corpus

13   proceedings); *Trevino*, 569 U.S. at 422-23 (recognizing factual reasons why state habeas counsel

14   may not have brought a meritorious claim); *see, e.g.*, *Michaels v. Davis*, 51 F.4th 904, 934-35

15   (9th Cir. 2022).

16        The state habeas corpus record alone does not supply the information necessary to show

17   deficiency.  In his second state petition, petitioner argued that any delay in his filing of claims

18   should be excused because the factual basis for some of the claims only became known to

19   petitioner after the Office of the Federal Defender was appointed to represent petitioner.  ECF No.

20   32 at 12-13.  He alleged that counsel representing him in his first petition for writ of habeas

21   corpus in state court had been hamstrung by the California Supreme Court's "$25,000 limit on

22   investigation and expert assistance, which was insufficient to adequately fund the assistance

23   needed to properly develop" his habeas corpus claims.  *Id.* at 13.  In support of this allegation, he

24   tendered the declaration of Mark Greenberg, his counsel during his first state habeas corpus

25   proceeding, who declared in relevant part:

26            In 2003, at the time I filed Petitioner's [first state] habeas petition,
             the California Supreme Court placed a limit of $25,000 on funding
27            for all investigation and experts in capital habeas cases prior to the
             issuance of an Order to Show Cause.  I consulted with California
28            Appellate Project and was informed that a request for funding

1   beyond the $25,000 limit would be futile.  I was able to use the
2   funding I did have to conduct some investigation regarding juror
    issues and Zelma Cureton, and contact some family members.  I
3   also was able to retain a neuropsychologist and conduct very brief
    consultations with other experts.  However, I did not have the funds
4   necessary to fully investigate and present Mr. Holloway's habeas
    claims.

5   ECF No. 32, Ex. 57 ¶ 4; *cf.* LD 39 (petitioner failing to raise any additional factual allegations,

6   nor support thereof, on this point in his reply brief).

7         Under *Strickland*, to show that his counsel performed deficiently under the Sixth

8   Amendment, a petitioner must show that his counsel's act or omission was the but-for cause of

9   some harm that befell him in his criminal proceedings.  *Strickland*, 466 U.S. at 687-88 (petitioner

10  must show that his trial counsel's performance "fell below an objective standard of

11  reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional

12  errors, the result of the proceeding would have been different").  Similarly, under the cause-and-

13  prejudice doctrine in federal court, a petitioner must show an actual causal link between "some

14  objective factor external to the defense" and his failure to have complied with the relevant state

15  procedural rule.  *Davila*, 582 U.S. at 528 ("To establish 'cause'—the element of the doctrine

16  relevant in this case—the prisoner must show that some objective factor external to the defense

17  impeded counsel's efforts to comply with the State's procedural rule.  A factor is external to the

18  defense if it cannot fairly be attributed to the prisoner." (cleaned up)).

19        Here, there exists nothing in the state court record to refute either petitioner's factual

20  allegations about the monetary limit on investigative funds in the preparation of his first petition

21  for writ of habeas corpus, or Mr. Greenberg's representations that that limitation affected his

22  preparation of that petition.  *See* LD 38.  Nevertheless, even if these allegations are fully credited,

23  they fail to establish that these limitations caused Mr. Greenberg to have failed to include claims

24  1.A, 1.D, 1.E.2, 2.A, 2.B, 2.C, 2.D, 2.E, 3, 4, 5.A, 5.B, 5.C, 5.D, 5.E.1, 5.F.2, 5.F.4, 5.G, 5.H, 5.I,

25  5.K, 5.L, 5.M, 5.N, 5.O, 6.C, 7.A, 7.C, 7.D, 9, 10.A, 19.B, 19.C, 21.B, or 27 in the first state

26  petition.  First, several of these claims, when asserted in the second state petition, relied solely on

27  the trial record; these are claims 3, 4, 5.A, 5.C, 5.E.1, 5.K, 5.L, 5.N, 5.O, 6.C, 7.A, 7.C, 7.D,

28  10.A, 21.B, and 27.  *See* ECF No. 32 at 91-104, 107-09, 112-13, 172-76, 205-07, 244-48, 251-54,

271-72, 341-42, 364-75.  Ergo, for these claims, there appears in the state court record no causal link between habeas counsel's dearth of investigative funds at the time of preparing the first state habeas petition and his failure to raise these claims in that petition; they could have been raised solely on the trial record.

Second, of the remaining claims at issue, several of them rely on information outside of the trial record, but access to this information does not, from the state-court record, appear to have been impeded by the funding cap.  One of the exhibits relied on by petitioner in his second state petition appear to have been created by and in the possession of habeas corpus counsel before the first state petition was filed.  ECF No. 32, Ex. 26; *see* LD 30 at 32.  Other of the exhibits relied on by petitioner in his second petition contain dates indicating that they were created before the date of the filing of the first state habeas corpus petition, although there is nothing in the record to indicate at what point they came into the actual possession of habeas corpus counsel.  ECF No. 32, Exs. 1, 2, 7, 8, 9, 10, 11, 13, 14, 19, 20, 21, 22, 23, 24, 27, 30, 32, 33, 34, 35, 36, 37, 38, 39, 41, 42, 43, 44.  Some of these materials, however, appear to have been generated in the course of the preparation of the first state habeas petition.  ECF No. 32, Exs. 8, 10, 11, 13; *see* LD 30 at 32.  Other materials were apparently generated prior to, or during, trial proceedings.  ECF No. 32, Exs. 1, 2, 7, 14, 19, 20, 21, 22, 23, 24, 27, 30, 32, 33, 34, 35, 36, 37, 38, 39, 41, 42, 43, 44.  Petitioner made no argument in the state record as to why he was impeded in accessing these records prior to filing his first state petition.  *See generally* ECF No. 32; LD 39.  In fact, in his first state petition, petitioner represented that, prior to that document's filing, he had contacted trial counsel, conversed with them about the case, and received their entire case file.  LD 30 at 15-21, 33-34.  This would seem to include most of the exhibits at issue, as they appear to have derived from trial counsel's files.  *See* ECF No. 32, Exs. 1, 2, 7, 14, 19, 20, 21, 22, 23, 24, 27, 30, 32, 33, 34, 35, 36, 37, 39, 41, 42, 43, 44.  Although one of petitioner's trial counsel and juror Edmonds both executed declarations after the filing of the first state petition, which were both included as exhibits to the second state petition, *see* ECF No. 32, Exs. 6, 11, 12, the state record indicates that both declarants had been known to habeas counsel and, in fact, had been contacted by and interviewed by habeas counsel before the filing of the first state petition.  LD 30 at 15, 20,

25-27, 32.  Finally, certain materials that were included as exhibits to the second state petition, including a declaration from a defense trial investigator, ECF No. 32, Ex. 25; records relating to juror Edmonds, ECF No. 32, Ex. 9; and records relating to alternate suspect Lance Reedy, ECF No. 32, Ex. 38, could have been obtained during the preparation of the first petition, as habeas counsel indicated he had investigated these areas prior to filing the first habeas corpus petition, and that his investigation had included interviewing relevant witnesses and obtaining relevant records.  *See* LD 30 at 15-32 (detailing investigative efforts into trial counsel's work, Juror Edmonds, and guilt-phase defenses).  In sum, the state court record does not support a finding that petitioner had failed to raise claims 1.A, 1.D, 1.E.2, 2.A, 2.B, 2.C, 2.D, 2.E, 3, 4, 5.A, 5.B, 5.C, 5.D, 5.E.1, 5.F.2, 5.F.4, 5.G, 5.H, 5.I, 5.K, 5.L, 5.M, 5.N, 5.O, 6.C, 7.A, 7.C, 7.D, 9, 10.A, 19.B, 19.C, 21.B, or 27 in his first state petition because he could not access the factual information forming the basis of these claims prior to the filing of that petition.  As such, the fact that these claims were later filed in an untimely, successive petition does not appear to have been caused by first habeas corpus counsel's claimed deficient performance.

Relative to Claims 2.A, 2.B, and 2.D, petitioner advances, and the state court record contains, additional evidence tending to show first state habeas corpus counsel's deficient performance as cause to excuse the default of these claims.  In support of his second state petition for writ of habeas corpus, petitioner tendered a declaration from Mr. Greenberg stating that he had not brought these subclaims in the prior habeas corpus petition because he had not, at the time, realized the legal significance of the facts surrounding these subclaims and had misconstrued the law governing them.  ECF No. 32, Ex. 57 ¶ 3.  A defense counsel is deficient for making decisions premised on a misapprehension of the law.  *See Hinton v. Alabama*, 571 U.S. 263, 272 (2014); *Kimmelman v. Morrison*, 477 U.S. 365, 385 (1986).  Nonetheless, petitioner cannot show prejudice on these subclaims in a cause-and-prejudice analysis, or, alternatively, that these subclaims should be dismissed at this stage as meritless.  *See Shinn*, 142 S.Ct. at 1739; *Schriro*, 550 U.S. at 474-75; *Franklin*, 290 F.3d at 1232; *Bell*, 543 U.S. at 451 n.3.

These subclaims are premised on the assertedly wrongful dismissal of a juror during penalty phase deliberations, based on, per petitioner, that juror's misrepresentations to the trial

court as to his reasons for wanting to be dismissed.  ECF No. 29 at 49-56; ECF No. 32 at 79-88.

To the extent these subclaims assert error by the trial court, they do not allege constitutional error.

A trial court may dismiss a juror midtrial who indicates his refusal to return a particular verdict

irrespective of the evidence.  *See United States v. Christensen*, 828 F.3d 763, 806 (9th Cir. 2015).

The court may not, however, dismiss a juror simply because the jury is deadlocked and the court

wishes to impel a verdict.  *United States v. Sae-Chua*, 725 F.2d 530, 531 (9th Cir. 1984).  Here,

per the undisputed facts as asserted by petitioner, juror Kimball informed the trial court

repeatedly and unequivocally that he had come the realization that he could not return a death

verdict regardless of the prosecution's evidence or his opinion of that evidence's reliability or

strength.  *See* ECF No. 29 at 46 (citing 26 RT 8171-79).  The trial court, at that time, had no

knowledge of the numerical division of the jurors on the question of penalty, had no knowledge

of whether juror Kimball was a holdout, and made no inquiries concerning these possibilities.

*See id.*  There is no authority for the argument that the trial court's conduct here violated any of

petitioner's constitutional rights.

To the extent petitioner argues, in subclaim 2.D, that juror Kimball committed misconduct

that prejudiced him, those allegations fail as a matter of law.  Petitioner argued in state court that

juror Kimball had lied when he told the trial court that he had come to the conclusion that he

could not consider the death penalty in any case and that he could not impose it in any case,

regardless of the facts or circumstances.  ECF No. 32 at 86.  Per petitioner, the record developed

in postconviction demonstrated that, instead, juror Kimball was simply "unpersuaded by the

prosecution's evidence" and therefore, instead of removing him, the trial court should have

declared a mistrial or ordered a retrial of the penalty phase.  LD 39 at 24 & n.2.  The state court

record, however, belies this description.  In state habeas corpus proceedings, petitioner tendered

an investigative memorandum purporting to memorialize juror Kimball's posttrial description of

his thoughts during the penalty phase deliberations, in which he purportedly described that he had

considered the evidence, initially believed he could render a death verdict, but, after days of

deliberation, "i[t] became clear to him that he could never vote for taking another person's life."

ECF No. 32, Ex. 20.  This accords with the statements he made to the trial court requesting his

dismissal.  *See* LD 17 (7 CT 1811); LD 19 (26 RT 8174-79).  His statements are not contradicted by other jurors' recollections that, initially during penalty phase deliberations juror Kimball had been a holdout on the question of penalty, highlighting some of the mitigation evidence he had heard, but that he also had made statements suggesting he could entertain a death verdict.  *See* ECF No. 32, Exs. 23-27.  These recollections are consistent with juror Kimball's own, uncontroverted representations of his internal shifting of beliefs about a possible penalty verdict and do not demonstrate that he had overstated or misrepresented those beliefs when he articulated them to the trial court.  Simply, the uncontroverted evidence before the state court, and the allegations comprising this subclaim in this court, do not make a prima facie showing that juror Kimball committed any misconduct.  As such, dismissal of subclaim 2.D is proper.

Finally, as described above, even if the state court record does not contain evidence of state habeas corpus counsel's ineffectiveness as cause to excuse the default of untimeliness and successiveness applied to claims 1.A, 1.D (to the extent it alleges ineffective assistance of counsel), 1.E.2, 2.A, 2.B, 2.C, 2.D, 2.E, 3, 4, 5.A, 5.B, 5.C, 5.D, 5.E.1, 5.F.2, 5.F.4, 5.G, 5.H, 5.I, 5.K, 5.L, 5.M, 5.N, 5.O, 6.C, 7.A, 7.C, 7.D, 9, 10.A, 19.B, 19.C, 21.B, or 27, petitioner may nonetheless develop evidence for his cause-and-prejudice showing in this court if he shows that such evidentiary development is merited under 28 U.S.C. section 2254(e).  *See Shinn*, 142 S. Ct. 1718.  Petitioner has made no such argument or showing.  *See generally* ECF No. 85.

For these reasons, petitioner has not shown that there is cause to excuse the procedural bars of untimeliness and successiveness that the California Supreme Court lawfully applied to claims 1.A, 1.D (to the extent it alleges ineffective assistance of counsel), 1.E.2, 2.A, 2.B, 2.C, 2.D, 2.E, 3, 4, 5.A, 5.B, 5.C, 5.D, 5.E.1, 5.F.2, 5.F.4, 5.G, 5.H, 5.I, 5.K, 5.L, 5.M, 5.N, 5.O, 6.C, 7.A, 7.C, 7.D, 9, 10.A, 19.B, 19.C, 21.B, and 27 of his Petition for Writ of Habeas Corpus, on the theory that first state habeas corpus counsel provided ineffective assistance of counsel.

### C.  Where Appellate Counsel's Ineffectiveness Would Be The Cause to Excuse Procedural Default

Petitioner argues that appellate counsel's ineffectiveness should be considered cause to excuse the default of claims 3, 4, 7.A, 7.C, 7.D, 9, 10.A, and 21.B, which the California Supreme

40

1    Court dismissed upon application of the *Dixon* bar.  ECF No. 85 at 49-56.  Nothing in the state

2    court record establishes appellate counsel's deficient performance.  *See generally* LD 21; LD 23;

3    LD 25; LD 26; LD 30 at 13-34; ECF No. 32 at 15-16 & Ex. 57; *see Murray*, 477 U.S. at 491-92;

4    *Strickland*, 466 U.S. at 688.  Petitioner has not made any showing that the standard of 28 U.S.C.

5    section 2254(e) has been met on the question of appellate counsel's ineffectiveness.  *See id.*;

6    *Shinn*, 142 S. Ct. 1718.  Consequently, petitioner has not met his burden of showing that his

7    appellate counsel's ineffectiveness constitutes cause to excuse the procedural default applied to

8    these claims.  *See Shinn*, 142 S. Ct. 1718.  Because the undersigned has recommended the

9    dismissal of claim 31, which alleges appellate counsel's ineffectiveness as a substantive claim, no

10   benefit to judicial resources would be derived by deferring resolution of this question until the

11   merits of the remaining claims are briefed.

12   
13           D.  *Where Trial Counsel's Ineffectiveness Would Be the Cause to Excuse Procedural*
               *Default*

14           Finally, for the three claims for which the contemporaneous objection rule facially

15   applies—claims 7.B, 11, and 28—petitioner has argued that trial counsel's ineffectiveness

16   constitutes cause to excuse the default.  ECF No. 85 at 49-56.  Petitioner has not made a showing

17   that the standard for evidentiary development on this issue has been met under 28 U.S.C. section

18   2254(e).  *See id.*  Nevertheless, in the state court record, petitioner made some showing of trial

19   counsel's ineffectiveness and many claims asserting that theory remain operative in the petition

20   even after resolution of the instant motion.  *See* ECF No. 29 at 38-39, 75-82, 95-118, 164-65,

21   171-73, 218-35 (claims 1.G, 5.E.2, 5.F.1, 5.F.3, 5.J, 6.E, 6.G, 19.A); *see generally* ECF No. 73 at

22   1, 15 & Appendix.  In subsequent proceedings, therefore, this court may need to determine

23   whether petitioner made a prima facie showing in state court of trial counsel's ineffectiveness

24   relative to those claims and, if so, if he can demonstrate a right to relief on the merits on them.

25   *See* 28 U.S.C. § 2254(d).  Because these showings may overlap considerably with the showing

26   required to prove cause and prejudice to excuse the defaults applied to claims 7.B, 11, and 28,

27   judicial economy is served by deferring resolution of the cause and prejudice question on claims

28   7.B, 11, and 28 until the remaining claims asserting ineffective assistance of counsel are resolved.

1    Therefore, the undersigned recommends respondent's motion for summary judgment be denied

2    without prejudice as to claims 7.B, 11, and 28.

3    **IX.   Fundamental Miscarriage of Justice**

4            Petitioner argues that this court may consider the merits of the claims at issue because

5    their dismissal due to procedural default would reflect a fundamental miscarriage of justice.  ECF

6    No. 85 at 58-62.[14]  A habeas petitioner's "otherwise-barred claims [may be] considered on the

7    merits . . . if his claim of actual innocence is sufficient to bring him within the 'narrow class of

8    cases . . . implicating a fundamental miscarriage of justice.'"  *Carriger v. Stewart,* 132 F.3d 463,

9    477 (9th Cir.1997) (quoting *Schlup v. Delo*, 513 U.S. 298, 315 (1995)).  To meet this gateway, the

10   petitioner must present proof of actual innocence in the form of "new reliable evidence—whether

11   it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical

12   evidence—that was not presented at trial."  *Schlup*, 513 U.S. at 324; *see also House v. Bell*, 547

13   U.S. 518, 537 (2006).  The petitioner must show "that more likely than not, in light of the new

14   evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or, to remove

15   the double negative, that more likely than not any reasonable juror would have reasonable doubt."

16   *House*, 547 U.S. at 538; *see also Majoy v. Roe*, 296 F.3d 770, 776 (9th Cir. 2002) (petitioner

17   "must show that, in light of all the evidence, including evidence not introduced at trial, 'it is more

18   likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable

19   doubt.'" (quoting *Schlup*, 513 U.S. at 327)); *see also Gage v. Chappell*, 793 F.3d 1159, 1167 (9th

20   Cir. 2015).

21           Here, petitioner tendered some evidence in post-conviction proceedings supporting his

22   defense of actual innocence, but it was not so compelling or "reliable" to establish that, had the

23

24           [14] Petitioner asks that resolution of this question be deferred until the court resolves the
     merits of the remaining claims.  ECF No. 85 at 56-62.  Petitioner appears estopped from making
25   such an argument, as it is contrary to the briefing order for which he has previously advocated.
     *See Morris v. State of Cal*., 966 F.2d 448, 452 (9th Cir. 1991).  On November 17, 2011, petitioner
26   moved the court to reconsider its prior briefing order and to resolve the application of procedural
     bars before reaching the merits of any remaining claims, arguing that proceeding in that manner
27   promoted judicial economy.  ECF No. 77; *see also* ECF No. 79 at 2.  The court granted that
     motion, ECF No. 81, 83, resulting in the instant briefing.  ECF No. 83.

28

jury been shown this evidence, "it is more likely than not that no reasonable juror would have

found petitioner guilty beyond a reasonable doubt." *See Schlup,* 513 U.S. at 324, 327.  The

evidence adduced at trial to establish petitioner's culpability principally

> consisted of his fingerprints inside the townhouse and Debbie's car;
> pubic and other hairs found at the crime scene that were consistent
> with defendant's hairs and inconsistent with the victims';
> defendant's initial false exculpatory statements to police, including
> an attempt to manufacture an alibi; and his eventual partial
> admission to presence at the crimes.

*Holloway*, 33 Cal. 4th at 103.  At trial, petitioner testified that he had had a consensual, sexual

relationship with one of the victims and that, on the night of the homicides, he came upon the

crime scene shortly after the murders and fled out of fear that he would be blamed.  *Id.* at 107-08.

The prosecution presented the testimony of a witness refuting that petitioner and the victim had a

romantic relationship.  *Id.* at 110.

The defense presented some evidence of the culpability of other persons for the crimes.

Zelma Cureton testified that, around the time the victims were killed in Sacramento, she

encountered two men while working as a prostitute in Reno.  *Holloway*, 33 Cal. 4th at 108.  The

men boasted about having killed two women in Sacramento, who were half-sisters, and "preferred

females."  *Id.*  One man wore a shirt that appeared bloodstained and stated that one victim

"almost got away" and "had the door of the car almost locked" before he "got there just in the

nick of time."  *Id.*  He reportedly stated that one victim had been stabbed and the other strangled,

and he mentioned having showered after the killings.  *Id.*

Ms. Cureton testified she had reported this conversation to local police, but law

enforcement investigators testified that, after investigating Ms. Cureton's report, it was

determined to relate to another killing that had occurred in Sacramento.  *Id.* at 109.  Investigators

also testified that Ms. Cureton was perceived as unreliable, as she had provided false crime

reports on two previous occasions.  *Id.*  The prosecution also presented evidence that Ms. Cureton

had reported this conversation as having occurred prior to the homicides of Ms. Cimmino and Ms.

Pencin, thus precluding the possibility that it referenced them.  *Id.* at 110.  The defense presented

evidence to support Ms. Cureton's reliability: Ms. Cureton had identified from a photograph a

1   man who lived across the street from the victims' home as one of the men whose conversation she

2   had heard and other witnesses testified that, in days before the crimes, they saw two or three

3   Black men outside the victims' home, who were wearing clothes resembling those Ms. Cureton

4   had described the conversing men to have been wearing.  *Id.* at 109.

5          In habeas corpus proceedings, petitioner alleges additional facts to strengthen the

6   reliability of Ms. Cureton's report.  He proffers a Reno Police report memorializing Ms.

7   Cureton's initial report to that agency, which corroborated the defense claim that the conversation

8   Ms. Cureton had overheard had occurred after the time of the homicides, and thus could have

9   been referencing the homicides of Ms. Cimmino and Ms. Pencin.  ECF No. 29 at 77-78.  This

10  report also seemed to undercut investigators' recollections that they had initially investigated Ms.

11  Cureton's report and had concluded that it related to another murder that had occurred in

12  Sacramento around the same time.  *Id.*  Petitioner also tendered a police report indicating that a

13  male informant—i.e., not Ms. Cureton—had been the source of the police's belief that the

14  conversation Ms. Cureton overheard had related to a different Sacramento homicide.  *Id.* at 80-81.

15  And petitioner tendered evidence that Ms. Cureton's probation officer believed her to be

16  generally truthful.  *Id.* at 79.

17         Petitioner also tendered evidence in habeas corpus proceedings supporting the alternative

18  defense that other persons had committed the murders.  He presented evidence that, prior to her

19  murder, Ms. Cimmino had been threatened and menaced by multiple neighbors and by another

20  prostitute.  ECF No. 29 at 94-95, 181-84.  He tendered some evidence that a man named Larry

21  Reedy may have committed the crimes, as his fingerprints were reportedly found in the victims'

22  home, his brand of cigarettes were found at the crime scene, he had a history of mental health

23  problems including violent thoughts towards women, and someone matching his general

24  description was observed near the crime scene on the night of the murders.  *Id.* at 88-93, 174-78.

25  Finally, petitioner tendered expert evidence impeaching the reliability of hair evidence purporting

26  to connect him to the crime scene; evidence supporting his claim that he and Ms. Cimmino had

27  been in a romantic relationship; and evidence that his inculpatory statements may have been

28  confabulations resulting from a mental defect.  *Id.* at 87-88, 95-118, 178.

Considering the totality of evidence of petitioner's guilt adduced at trial, as well as that presented in post-conviction proceedings, petitioner has not shown that he is actually innocent of his crimes of conviction.  He has not tendered "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" tending to show his innocence.  *Schlup*, 513 U.S. at 324.  Much of the evidence on which petitioner bases his argument for Ms. Cureton's credibility comes from hearsay statements attributed to two unknown speakers.  Even if the jury had fully credited Ms. Cureton's statements, however, and had believed that she identified a neighbor of the victims as one of the speakers, the hearsay statements themselves were vague and lacked certain connection to the homicides of Ms. Cimmino and Ms. Pencin.  Moreover, petitioner points to no evidence either at trial or adduced in habeas proceedings that tends to show that the hearsay statements themselves were reliable—for example, by virtue of the circumstances of their being uttered—or that would tend to show the truthfulness of the hearsay declarants themselves.  In sum, the evidence of Ms. Cureton's recollections of this conversation, and evidence tending to support her truthfulness regarding her recollections, does little to demonstrate that petitioner was actually innocent of the crimes with which he was ultimately convicted.  *See Schlup*, 513 U.S. at 327.

The same conclusion obtains when this evidence is considered together with the other evidence of petitioner's innocence on which he now relies.  Although petitioner identified other suspects in the homicides—including Larry Reedy, neighbors, and others—he tendered no evidence tending to show that any of these persons were anything more than suspects; certainly, he tendered no "reliable" evidence, such as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" tending to show that any of these other persons committed the crimes of which petitioner was convicted.  *See Schlup*, 513 U.S. at 324. While petitioner impugns the reliability of the prosecution's physical evidence, the evidence he tendered in post-conviction fails to show that he could be excluded as the contributor of the hair found in the victims' home and, thus, this expert opinion does little to assist petitioner in carrying his burden of showing his actual innocence.  The jury could also discount petitioner's evidence that his inculpatory statements were mere confabulations, in light of the other evidence of his

1   presence at the crime scene, and give little weight to the evidence that petitioner had spent the

2   night previously with one of the victims, as it related only obliquely to the question of whether

3   petitioner had been present on the night of the crimes.

4       Taken together, the evidence presented in habeas corpus proceedings only weakly

5   supports petitioner's innocence defense and fails meaningfully to impeach the prosecution's

6   evidence of his culpability.  Although petitioner developed evidence of plausible alternate

7   suspects, plausible explanations for his fingerprints being found throughout the crime scene, and a

8   plausible description of his having given a false inculpatory statement about the crimes, none of

9   these possibilities is more compelling than the cumulative evidence of petitioner's culpability that

10   the jury already heard.  *Cf.* ECF No. 29 at 97 (petitioner acknowledges "the evidence of [his]

11   false alibi and his incriminating admissions at the end of his March 22, 1983 statement pointed

12   strongly toward guilt").  Petitioner fails to meet his burden to "show that, in light of all the

13   evidence, including evidence not introduced at trial, 'it is more likely than not that no reasonable

14   juror would have found petitioner guilty beyond a reasonable doubt'" had evidence of his

15   innocence been presented.  *Majoy v. Roe*, 296 F.3d 770, 776 (9th Cir. 2002) (quoting *Schlup*, 513

16   U.S. at 327).

17       Accordingly, it is hereby ORDERED that the Clerk of Court substitute Michael Martel as

18   respondent.

19       Further, it is RECOMMENDED that:

20       (1) Respondent's Motion for Summary Judgment, ECF No. 56, be denied without

21           prejudice as to claims 1.C, 1.F, 7.B, 11, and 28 of the Petition for Writ of Habeas

22           Corpus; and

23       (2) Respondent's Motion for Summary Judgment, ECF No. 56, be granted as to claims

24           1.A, 1.D (to the extent it alleges ineffective assistance of counsel), 1.E.2, 2.A, 2.B,

25           2.C, 2.D, 2.E, 3, 4, 5.A, 5.B, 5.C, 5.D, 5.E.1, 5.F.2, 5.F.4, 5.G, 5.H, 5.I, 5.K, 5.L, 5.M,

26           5.N, 5.O, 6.C, 7.A, 7.C, 7.D, 9, 10.A, 19.B, 19.C, 21.B, 27, and 31 of the Petition for

27           Writ of Habeas Corpus.

28   These findings and recommendations are submitted to the United States District Judge

1  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within thirty days after

2  being served with these findings and recommendations, any party may file written objections with

3  the court and serve a copy on all parties.  Such a document should be captioned "Objections to

4  Magistrate Judge's Findings and Recommendations."  If petitioner files objections, he shall also

5  address whether a certificate of appealability should issue and, if so, why and as to which issues.

6  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a

7  substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  Any

8  response to the objections shall be filed and served within thirty days after service of the

9  objections.  The parties are advised that failure to file objections within the specified time may

10  waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.

11  1991).

12

13  IT IS SO ORDERED.

14

15  Dated:   January 30, 2024                    _____

16                                               JEREMY D. PETERSON
                                                 UNITED STATES MAGISTRATE JUDGE
17

18

19

20

21

22

23

24

25

26

27

28